# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND



CHAMBERS OF
GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSChambers@mdd.uscourts.gov

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627

July 13, 2026

Re:     *Fahimeh Mirakhori  v. Arcellx, Inc.*
        Civil Action No. TDC 23-1619

### LETTER OPINION AND ORDER RESOLVING OUTSTANDING DISCOVERY-RELATED ISSUES RAISED BY DEFENDANT

Dear Ms. Mirakhori and Counsel:

This matter has been referred to the undersigned for discovery and all related scheduling. (ECF No. 89).

Plaintiff Mirakhori ("Plaintiff") and Defendant Arcellx, Inc. ("Defendant") raised several discovery disputes in various filings, in which they sought to file motions to compel discovery from each other. (ECF Nos. 80, 82, 83, 85, 91). The undersigned reviewed the aforementioned filings, and all of the exhibits appended thereto, and scheduled and presided over a telephonic discovery dispute hearing. (ECF Nos. 94, 95, 96, 98).  This Letter Order only contains the Court's rulings related to the discovery disputes raised by the Defendant.[1]

During and after the discovery dispute hearing, the Court ordered the parties to engage in *further* meet and confer conferences during which they would act in good faith to try to resolve their outstanding discovery disputes.  *See, e.g.,* ECF No. 98, pp. 5-8, 53-57; ECF No. 97, ¶2 (emphasis supplied).  In addition, if any discovery disputes remained after engaging in their conversations, the parties were ordered to read the case of *Anderson v. Reliance Standard Life Ins. Co.*, Civ. No. WDQ 11-1188, 2011 WL 4828891, at *3 (D. Md. Oct. 11, 2011), and to engage in the method/process outlined therein.  (ECF No. 98, pp. 39-43).  The parties were further ordered to produce final spreadsheets that contained their final positions on unresolved discovery disputes by January 31, 2026 and documentation related thereto (following the *Anderson* method).  (*Id.*; ECF No. 97, ¶¶ 4-6).  The parties were directed to email the spreadsheets and materials that support their respective discovery requests to my Chambers, rather than submitting the same via CM/ECF.[2]

---

[1]By separate Letter Order, the Court addresses the discovery disputes raised by Plaintiff.

[2] The undersigned reviewed the parties' efforts to meet and confer as required by the Court's orders. (ECF Nos. 101-105, 109-111 and attachments related thereto).  The Court finds that despite Judge Chuang's clear admonition that their failure to cooperate with each other in resolving discovery disputes "may result in sanctions, dismissal of this case, or default judgment" (ECF No. 75, p.3), the parties did not always behave civilly towards each other. In particular, the parties continued to accuse each other of  refusing to cooperate and confer **on their terms**. (ECF Nos. 101-105, 109-111). The undersigned further finds that both sides tended to "cherry-picked" the facts to support their narratives. In sum, the undersigned declines to find that the parties earnestly complied their

The Court timely received from the Defendant a spreadsheet called "ARC Excel-Mirakhori v. Arcellx, Inc. – Disputed Discovery Spreadsheets (Defendant's Draft Jan. 11, 2026)(Plaintiff's Edits Jan. 20, 2026)(Defendant's Edits Jan. 27, 2026)." (ECF No. 99). The Excel document has two tabs: the first tab is labelled "PX List of Defendant' (sic) Violation;" and the second tab is labelled "Defendant's Disputed Requests." Having reviewed the two tabs, only the second tab is relevant for this Letter Order, as the first relates to Plaintiff's claims about the sufficiency of the Defendant's discovery responses. In issuing this Letter Order, then, I will thus refer to the relevant document as "Defendant's Spreadsheet." The Defendant's Spreadsheet contains information about: (1) the discovery requests made and the date(s) that they were served upon Plaintiff; (2) Defendant's description of how its discovery requests are relevant to the claims asserted by Plaintiff or to its defenses; (3) how Plaintiff's responses are deficient; and (4) Plaintiff's January 20, 2026 responses to the information contained in (1) through (3).

The Defendant also submitted the materials upon which it relies for its requests, namely:

(a) Notices and Amended Notices of Plaintiff's deposition;

(b) multiple pages of emails between Defendant and Plaintiff's former counsel, Mr. Emejuru, related to Plaintiff's deposition;

(c) Defendant's first set of RFPDs (RFPDs Nos. 1-23) served on Plaintiff;

(d) Plaintiff's responses to Defendant's first set of RFPDs.

(e) "Plaintiff's First Set of Discovery to Arcellx, Inc. with responses to RFPDs 1-23, from Plaintiff's former counsel, Mr. Emejuru;

(f) an undated letter from A. Dhali, Plaintiff's former counsel, which the Court infers was sent after July 31, 2024. This letter provides additional information about: (1) Plaintiff's responses to: RFPDs 5, 9, 18, 20, 23 (an individual response for each); (2) the same response for RFPDs 7, 8, 10-15, 17, 19, 21; (3) Plaintiff's responses that what she produced for documents numbered Title VII 001-004, Title VII 006, Title VII 032, Title VII 056, and Title VII 057 is what she has; and (4) and explanation about her production of documents numbered Title VII 060-064, Title VII 065-069, Title VII 071,

---

obligations to sincerely resolve their discovery disputes without court involvement. They certainly did not comply with Guideline 1a. of the Local Rules and there does not appear to be true compliance with Local Rule 104.7. Because the parties' Local Rule 104.7 certifications are deficient, the Court is not required to entertain either side's discovery disputes. *See generally Madison v. Howard County, Md.*, 268 F.R.D. 563, 564 (D. Md. 2010). Nonetheless, to move these parties along, the Court chose to resolve the issues before it. The Court again warns Plaintiff and Defendant that they are required to comply with all discovery-related orders issued by the Court. The parties are again warned their failure in the future to comply with the Court's order could result in the imposition of sanctions against them. *See, e.g.,* Fed. R. Civ. P. 37(b).

Title VII 073, Title VII 075, Title VII 077, and Title VII 079. The Court will refer to this as Post July 31 Dhali Letter."

(g) Defendant's second set of RFPDs (RFPDs Nos. 24-26) served on Plaintiff;

(h) Plaintiff's November 10, 2025 response to Defendant's discovery request "Plaintiff's Response to Defendant's October 5, 2025 Discovery Letter and Deposition Scheduling Clarification, via email;"

(i) copies of documents produced by the Plaintiff with the following Bates Nos.: Title VII 001-004, 006, 032, 056, 057, 065, 071,075, 077;

(j) Defendant's First Set of Interrogatories to Plaintiff (Interrogatories 1 through 4); and

(k) a January 8, 2025 email between former counsel, A Dhali, and counsel for Defendant, in which A. Dhali says that the Interrogatories have been sent to P for her response.

I will call these materials "Defendant's Documents in Support of Spreadsheet."

In addition, attached to this Letter Opinion and Order are Exhibits A, B, and C. These Exhibits contain verbatim recitations of the parties' arguments. In brief, Defendant seeks an order compelling Plaintiff to: (a) appear for an in-person deposition; (b) provide complete answers to interrogatories (hereinafter "Interrog." or "Interrogs."); and (c) provide complete copies of documents called for by certain requests for production of documents (hereinafter "RFPDs" or "RFPD"). The Court infers that Defendant's request is made pursuant to Fed. R. Civ. P. 37(a).[3]

The Court has reviewed all of the CM/ECF filings and attachments thereto listed in this Letter Opinion Order, all documents offered by Plaintiff, and all of the CM/ECF filings and attachments thereto listed in the Defendant's Spreadsheet, regardless of who cited them. The Court also reviewed "Defendant's Documents in Support of Spreadsheet." In addition, because there were incomplete submissions and such divergent views on the history of discovery requested and exchanged, in the exercise of my discretion, the undersigned also reviewed **every docket entry in this case to date (i.e., ECF Nos. 1-111).** Thus, in issuing this Letter Order, the undersigned has reviewed every submission of record.

To be clear, the Court's ruling, then, is predicated on what the parties have chosen to docket and what the parties have chosen-selectively or otherwise-to put before it.[4] Put another

---

[3] Rule 37(a)(1) allows a party to move for an order compelling disclosure or discovery. Rule 37(a)(3)(B)(iii) and Rule 37(a)(3)(B)(iv) allow a party to move for an order compelling discovery if the other party fails to answer an interrogatory or fails to produce documents.

[4] The Court feels fairly certain that the parties assume that they provided it with more details that they actually did. For instance, ECF No. 64-3, pp. 9-143, are completely blank.

way, when resolving the disputes, the undersigned evaluated for relevance the quality and strength of the arguments and of the documents before it.

When resolving the disputes, the Court invokes its "broad discretion in resolution of discovery problems that arise in cases pending before it." *Duncan v. Costco Wholesale Corp.*, Civ. No. SAL 20-3605, 2021 WL 5827272, at *2 (D.S.C. Apr. 12, 2021) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)). Moreover, when issuing its rulings, the Court has reviewed and analyzed Local Rules 104.3, 104.6, 104.7, 104.8 and Appendix A (D. Md. 2025), Fed. R. Civ. P. 26(b)(1), Fed. R. Civ. P. ("Rule") 26(b)(2)(C)(i), Rules 26(b)(2)(C)(ii)-(iii), Rule 26(c), Rule 26(g), Rule 30, Rule 33, Rule 34, Rule 37, and the caselaw related thereto. Because the Court finds that the matters that are ripe for my consideration have been fully briefed, no additional hearing is necessary. *See* Local Rule 105.6. (D. Md. 2025).

As set forth, herein, the Court **GRANTS IN PART, DENIES IN PART**, Defendant's requests to compel discovery.

## I.     PROCEDURAL HISTORY

This section contains relevant information considered by the Court when resolving the discovery disputes.

By way of background, Plaintiff initiated the instant action by filing a Complaint. (ECF No. 1). At that time, Plaintiff was represented by counsel, Ikechukwu K Emejuru, Esq. (*Id.*). Defendant's counsel entered their appearance and later, with the Court's leave, Defendant filed an Answer. (ECF Nos. 8-10, 13, 17). Subsequently, the district court held a case management conference on October 26, 2023 after which it ruled that the Scheduling Order issued would govern this case. (ECF Nos. 24, 25, 27). Per that Scheduling Order, discovery was to close on February 20, 2024. (ECF No. 25).

On December 15, 2023, the parties agreed upon the terms of two protective orders, one related to attorney-client privileged materials, and the other related to the confidentiality surrounding documents and information obtained during discovery. (ECF Nos. 28-29). As is relevant to resolve the discovery disputes, the district court approved and entered a "Stipulated Protective Order." (ECF No. 31).

Roughly fifty-four (54) days after the case management conference, Mr. Emejuru filed a motion to withdraw as counsel, which the district court granted on January 4, 2024. (ECF Nos. 32, 33). The district court also entered an order directing Plaintiff to file a status report within 14 days, in which she set forth whether she would be proceeding *pro se* or via new counsel. (ECF No. 35).

Roughly twelve (12) days later, Plaintiff filed a letter to the district court. (ECF No. 36). In that letter she complained about the conduct of former counsel, and stated that she had "been facing health challenges that significantly impact [her] ability to participate fully in legal proceedings without reasonable accommodation." According to Plaintiff, she "had formally requested an accommodation due to my health condition, seeking a change in the deposition

location and time to better align with [her] circumstances." (*Id.*). Plaintiff continued that this request was ignored by her attorney, and she alleged that her former attorney failed to adequately respond to her requests. (*Id.*). She also sought an extension of the deadline to find counsel, having experienced an emergency health crisis during the holiday season. (*Id.*). Two days later, Defendant filed a letter. (ECF No. 37). In that letter, counsel stated that it was unaware of Plaintiff's health conditions. Defendant's counsel also articulated that former counsel's withdrawal from the case "left behind a spate of unresolved discovery issues," including: (a) Plaintiff's belated service of her "initial document production and written responses to Arcellx's requests for production on December 4, 2023; (b)Plaintiff's failure to make any additional document productions; (c)deficiencies in Plaintiff's initial document production; (d)unsuccessful attempts by Plaintiff to schedule depositions of three of Defendant's employees; (e) unsuccessful attempts by Defendant to reschedule Plaintiff's deposition (due to "Plaintiff's late and incomplete document production");and (f) Plaintiff's request to depose Defendant's CEO. (*Id.*). Thus, Defendant requested a status conference with the Court to discuss an extension of the Scheduling Order and for an opportunity to better understand how Plaintiff's health conditions impacted her ability to participate in litigation. (*Id.*). On January 22, 2024, the district court issued an order staying the case for 60 days to permit Plaintiff to find counsel and directing her or new counsel to file a status report. (ECF No. 38).

On March 20, 2024, new counsel, A. Dhali, Esq. entered his appearance as Plaintiff's counsel. (ECF No. 40). A week later, the district judge directed the parties to file a joint status report within fourteen (14) days. (ECF No. 41).

On April 10, 2024, the parties' counsel filed a joint status report, in which they represented that they had met and conferred and requested extensions of some of the deadlines in the Scheduling Order, including that discovery would close by no later than October 30, 2024. (ECF No. 42).

On September 11, 2024, the parties filed a "Stipulation to Further Amend the Scheduling Order." (ECF No. 43). In that Stipulation, the parties represented that they had agreed that Plaintiff's deposition would occur on September 11, but on August 9 Plaintiff's counsel told Defendant's counsel that Plaintiff was no longer available on that date for deposition, and that Plaintiff "represented that she was unavailable for deposition until the last week of September 2024, and therefore the parties have rescheduled Plaintiff's deposition to October 28, 2024." (*Id.*). Counsel also jointly represented that because of the rescheduling of Plaintiff's deposition, "any depositions of Arcellx witnesses will not occur until dates in November or December 2024 to be mutually agreed upon." (*Id*). The parties thus mutually requested that several deadlines in the Scheduling Order be extended again, including that discovery would close on February 7, 2025, notices of intent to file pretrial dispositive motions would be due on February 27, 2025, and Rule 26(e)(2) supplementation of disclosures would be due on March 27, 2025. (*Id.*).  On September 18, 2024, the district court granted the parties' joint requests. (ECF No. 44).

Approximately 90 days after the Court's order, Plaintiff's second counsel filed a motion to withdraw from this case, stating that "counsel and Mirakhori have a difference in legal strategy in prosecuting this case; unfortunately, these differences can no longer be resolved without conflicting our duties and obligations as officers of this Court." (ECF No. 45).  Counsel also

5

represented "this matter is still in the discovery phase," and "Discovery in this matter also does not close until February 7, 2025," and "We ask that the Client be allowed 90-days to obtain new counsel." (*Id.*).[5]

Defendant field an opposition to counsel's motion to withdraw, and several exhibits in support thereto. (ECF No. 49 thorough ECF No. 49-5). Defendant chronicled its version of the history of discovery propounded as of that date, identifying deficiencies in Plaintiff's responses. (*Id.*). Ultimately, Defendant objected to the Court granting the motion to withdraw principally because of concerns about prejudice that would result from any further delay in the litigation. Subsequently, the district court granted the motion to withdraw and gave Plaintiff 90 days to retain new counsel. (ECF No. 55).[6] Thereafter, the district court granted Plaintiff's request for another 60 days to locate counsel. (ECF No. 66). To date, no attorney has entered his/her appearance on behalf of Plaintiff. Thus, Plaintiff proceeds *pro se*.

On September 29, 2025, Plaintiff filed a Status Report, in which she contended that Defendant's counsel had engaged in unsavory behavior, including "delaying tactics," "bad faith practices," and "improper opposition to accommodation requests." (ECF No. 73). Plaintiff also hurled allegations of "witness tampering," and "misuse of personal information that led to harassment from third parties." (*Id.*). Plaintiff had also filed a status report three days earlier, complaining about Defendant's counsel's conduct. (ECF No. 71). Defendant had to file its own status report later, having been unable to secure Plaintiff's cooperation in preparing a joint status report. (ECF No. 74 and attachments thereto).

Between November 19, 2025-December 4, 2025, Plaintiff made additional filings, seeking what she termed an "ADA accommodation request," and "protection" from what she characterized as "ongoing procedural abuse and discovery misconduct" by Defendant. (ECF Nos. 78, 79, 80, 82, 85 and attachments thereto).

Finally, as a practical matter, the Scheduling Order entered by the district court was extended, but ultimately lapsed a while ago. (ECF Nos. 25, 44). Discovery was stayed to permit Plaintiff to try to obtain counsel. (ECF Nos. 55, 66). That time lapsed, followed by the appointment of undersigned to manage discovery and all related scheduling. (ECF No. 89).

---

[5] Plaintiff has filed letters under seal that the district court construed as her objections to Mr. Dahli's motion to her withdraw as counsel. (ECF Nos. 46, 47, 52, 53, 56). The district court then directed Mr. Dahli to respond to Plaintiff's objections, which counsel ultimately did, filing them under seal. (ECF Nos. 48, 50, 51, 54). Because ECF Nos. 46, 47, 50, 52, 53, 56 remain under seal, the undersigned was careful to not reveal the substance of the same in this Letter Order. Instead, the Court analyzed Plaintiff's arguments outlined in documents not under seal, including ECF Nos. 64, 73.

[6] Between February 6, 2025 and December 4, 2025, the parties file additional letters and the district court issued orders. (ECF Nos. 57-63, 67, 70, 71, 74-77, 80, 82-85). To the extent deemed relevant, the undersigned addresses some of these filings herein.

Having now issued this Letter Opinion and Order and the Letter Opinion and Order related to Defendant's discovery requests, the undersigned will separately issue a Final Scheduling Order.

## II.    DISCOVERY PRINCIPLES

### A. Relevance, Proportionality, Objections

#### 1. Relevance

It is well settled that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*See* Fed. R. Civ. P. 26(b)(1).

The term "relevance" has been "broadly construed to encompass **any** possibility that the information sought **may be** relevant to the **claim** or **defense** of any party." *O'Malley v. Trader Joes East, Inc.*, Civ. No. RDB 19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020)(internal citations and quotation marks omitted)(emphasis supplied). This is a pretty low threshold. It does not matter whether that evidence is ultimately admissible at trial, nor does it matter whether one party disagrees with how the other party might be able to use that evidence at trial. The relevant inquiry is whether the information sought **may possibly be** relevant to the defense, or whether the information sought **may possibly be** relevant to a claim asserted in the Complaint. Disputes over how facts are interpreted are the province of the factfinder and are not germane to the question of whether information sought is discoverable.

As I understand it, Plaintiff brings suit against Defendant advancing three claims: Count I, Retaliation, under Title VII of the Civil Rights Act; Count II, Retaliation, under the Equal Pay Act; and Count III, Discrimination, under the Equal Pay Act. (ECF No. 1). In brief, Plaintiff alleges that because of her gender, Defendant hired her at a lesser title and compensated her at lower pay rate than a male counterpart, and when she complained to Defendant about the pay disparity and other disparate treatment, she was retaliated against and ultimately terminated. (*Id.*). Plaintiff has affirmatively prayed for damages (nominal, compensatory and punitive), including the award of "back pay, front pay, and future benefits." (*Id.*). Defendant has filed an Answer, in which it denies the allegations and asserts several affirmative defenses, including that it did not retaliate against her by firing her after she complained about gender-based discrimination (to

include disparate pay) and that she was not subject to unequal pay due to her gender. (ECF No. 17). Accordingly, the Court finds that if there is any possibility that the information sought by Defendant helps it to understand Plaintiff's claims and the damages that she seeks, then Defendant is entitled to discovery, subject only to legitimate objections and the proportionality restrictions identified herein.

### 2. Proportionality

The Court recognizes that there are limits to the production of even relevant discovery. Namely, "all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010). In other words, something may be discoverable under Fed. R. Civ. P. 26(b)(1), but it is always to be measured against the proportionality yardstick, which requires the court to consider several factors. Specifically, Rule 26 requires that "the frequency or extent of discovery" must be limited if:

> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii); *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Marrying the aforementioned principles, when analyzing whether to limit discovery, the court is to: (a) consider "the importance of the issues at stake in the action. . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Rule 26(b)(1); and (b) whether the discovery sought runs afoul of Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). Thus, if Defendant's request is unreasonably cumulative or duplicative, then it is disproportionate to the needs of the case and will be denied.

### 3. Objections to Discovery

Any party that opposes discovery bears the burden of establishing why the discovery sought should not be allowed. *McNulty v. Casero*, Civ. No. SAG 16-2426, 2019 WL 5454900, at *3 (D. Md. Oct. 2, 2019)("party resisting discovery generally carries the burden to 'clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules.'")(quoting, *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005)). Put another way, a party cannot make boilerplate objections to requested discovery, merely arguing that the information sought is, e.g., "burdensome" or "vague" or "overbroad" or "irrelevant." Rather, the objecting party making such an assertion is expected to support it with particularized facts. *See, e.g.,* Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573 (D. Md. 2010); *Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 99 (D. Md. 2003)("properly

8

particularized showing of burden. . .identifies evidentiary facts to support claims of unfair burden or expense")(citation and internal quotation marks omitted).

Next, it is inappropriate for a party to refuse to provide discovery to the other party simply because the party believes that the other party has not adequately responded to the party's discovery requests. There is no "simultaneous" or "mutual" exchange of discovery rule, nor is there a "tit-for-tat" rule of discovery, i.e., there is no "I-am-only-required-to-produce-discovery-to-you-if-you-produce-discovery-to-me" rule. Instead, each party is required to timely and adequately object to discovery requested or timely produce it. *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.,* 173 F.R.D. 651, 657 (D. Md. 1997). Relatedly, "the text and spirit of the discovery rules [make clear] that the existence of a discovery dispute as to one matter is not a ground to delay or withhold the taking of other discovery." *Id.* And Local Rule 104.3 (D. Md. 2025) makes clear that "the existence of discovery dispute as to . . .one matter does not justify the delay in taking other discovery. Thus, Plaintiff's complaints about Defendant's requests that she produce responsive discovery despite "simultaneously refusing to produce [its] own merit-based documents" is irrelevant to Plaintiff's obligations to provide relevant and responsive discovery.

In addition, the Court holds that no boilerplate objections will be allowed; words like "burdensome" or "vague" or "overbroad" or "irrelevant" or "harassing" cannot be bandied about. Instead, the party objecting has a burden to demonstrate the legitimacy of the objection. Relatedly, then, the Court finds that a party's objection to producing discovery must be particularized. For interrogatories, this is what Fed. R. Civ. P. 33(b)(4) requires, and for RFPDs, Fed. R. Civ. P.34(b)(2) similarly requires such a response. *See also* Local Rule 104.6 (D. Md. 2025). So, for example, an objecting party can challenge the relevance of the discovery sought, or assert privilege over the discovery sought (Rule 26(b)(3), and/or argue that the requested discovery is not proportional to the needs of the case (e.g., its cumulative or duplicative or burdensome or "can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").

In sum, if an objection is not particular, the Court has the authority to find that the party has waived her/its right to object to the discovery request. *See Lynn v. Monarch Recovery, Mgmt., Inc.* 285 F.R.D 350, 356 (D. Md. 2012)("failure to state with specificity the grounds for an objection [to an interrogatory request under Rule 33(b)(4)] may result in waiver of the objection").

## B. Federal Rule of Civil Procedure 26(e)

Because discovery is dynamic, Fed. R. Civ. P. 26(e) requires a party to supplement her responses to Interrogs. and RFPDs whenever she learns that her prior disclosures or responses are "in some material respect incomplete or incorrect." Fed. R. Civ. P. 26(e), Advisory Committee Note to the 1993 amendment. In particular the Rule provides:

> A party who has made a disclosure under Rule 26(a)- or who has responded to an interrogatory, request for production, or request for admission-must supplement or correct its disclosure or response: (A) in a timely manner if

9

the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not been otherwise made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P 26(e)(1).

Thus, as the Rule makes clear, Plaintiff and Defendant must make sure that their discovery responses are and remain correct and complete, and if they are not, to correct the deficiency. *See generally Tucker v. Ohtsu Tire & Rubber Co., Ltd.* , 191 F.R.D. 495, 502 (D. Md. 2000)( (Rule 26 makes clear that producing party "is obligated to supplement its production if it learns that its prior response is in some material respect incomplete or incorrect). Thus, it is not unusual or harassing for Defendant to ask Plaintiff if Plaintiff has additional discovery that is responsive. Nor is it harassing to ask Plaintiff whether she has, in fact, produced all information that she has in her possession, custody and control. Plaintiff cannot ignore her ongoing duty to supplement and cannot just brush off Defendant's questions by labelling them "harassing."

### C.  Federal Rule of Civil Procedure 26(g)

Pursuant to Fed. R. Civ. P. 26(g), when an attorney of record or a *pro se* litigant requests discovery, discloses discovery, or responds to or objects to discovery, there are certain requirements that must be followed.  First, every request, disclosure, response or objection "must be signed." Fed. R. Civ. P. 26(g)(1).  By signing any one of the aforementioned, the person is:

certify[ying] that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry. . . (A) with respect to a disclosure, it is complete and correct as of the time it is made; and (B) with respect to a discovery request, response, or objection it is. . .(i) consistent with these rules and warranted by an existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ.  P. 26(g)(1)(A), (B)(i)-(iii).

Before certifying her discovery responses, Plaintiff must "make 'a reasonable effort to assure that [she] has provided all of the information and documents responsive to the discovery demand.'" *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 503 (D. Md. 2000)(quoting Advisory Committee Notes to the 1983 amendments to Rule 26(g)).  If Plaintiff makes a Rule 26(g) certification that violates the Rule, "without substantial justification, the Court (on motion or *sua sponte*)  must impose an appropriate sanction, which may include an order to pay

10

reasonable expenses and attorney's fees, caused by the violation." *Mancia v. Mayflower Textile Servs. Co*, 253 F.R.D. 354 357 (D. Md. 2008).

### III.    DEFENDANT'S DISCOVERY REQUESTS

#### A.  Defendant's Requests for Production of Documents: RFPDs 1-23, 24-26

##### 1.  *Defendant's Timeline of Discovery Events*

Defendant asserts that on October 30, 2023 counsel served its First Set of Document Requests on Plaintiff. (ECF Nos. 49 through 49-5). In its first request, Defendant propounded RFPDs Nos. 1-23. According to Defendant, Plaintiff responded on or about December 3, 2023, or December 4, 2023, only objecting to RFPD No. 5. (*Id*). Plaintiff provided written responses to the other RFPDs and produced 64 pages of Bates numbered documents.  (ECF No. 83-2). Plaintiff provided "original responses and objections" and an "original production," which consisted of documents with Bates Nos. FM 1-64 (ECF No. 49-3, p. 2).

On December 13, 2023, Defendant sent a letter ("First Deficiency Letter") to Ike Emejuru, Esq., advising Plaintiff of the deficiencies and seeking full production of documents. Defendant asserted that responses to the following RFPD were lacking: RFPD Nos. 2-15, 17-23. (ECF No. 83-2). Defendant asked for a response by December 23, 2023. (*See, e.g.,* ECF No. 49-2). According to Defendant, it did not receive a response from counsel. Instead, prior counsel filed a motion to withdraw on December 22, 2023. (ECF No. 49, ¶5).

As noted above in Section I., approximately 3 months passed between the withdrawal of Plaintiff's first counsel, Mr. Emejuru, and the entry of appearance of Plaintiff's second counsel, AJ Dhali.  The undersigned does not have any evidence before it that discovery continued during these roughly 3 months.

Defendant claims that on March 28, 2024, counsel "raised the open discovery issues with Plaintiff's new counsel, including by sending him the RFPs, Plaintiff's written responses to those requests, and Plaintiff's initial production, and the December 13, 2023 letter"  with Plaintiff's new counsel, AJ Dhali, Esq. (ECF No. 49 , ¶11).  Defendant asserts that Mr. Dhali asked to be sent the materials again because he did not receive them from former counsel. (*Id.*).

Defendant represents that on June 3, 2024, counsel followed up again with AJ Dhali on the outstanding discovery requests. (ECF No. 49 , ¶¶ 11-12). Defendant contends that Mr. Dhali responded that day "saying that he was busy with pretrial matters and another case scheduled for trial, and that he would need to reach out to counsel. . .the week of June 17 to address the issues raised in the letter." (ECF No. 49 , ¶11).

Defendant represents that on June 26, 2024, counsel followed up with AJ Dhali about the discovery (ECF No. 49 , ¶13).  Defendant maintains that counsel "responded that day promising a response 'next week.'" (*Id.*).

Defendant represents that AJ Dhali responded on or about July 9, 2024 and July 10, 2024 "with [incomplete responses] and an incomplete document production." (ECF No. 49 , ¶14; ECF No. 49-4, p. 3, 2nd and 3rd bullets). Defendant represents that on July 9-10, 2024,  Plaintiff produced "Plaintiff's Supplemental Responses and Objections. . . the 'Supplemental Responses.'" Defendant also represents that it also received "two productions of documents (Bates Nos. Title VII 001-093 and FMjobs001 to FMjobs 079)("Supplemental Productions") (ECF No. 49-3, p. 2).  Neither Defendant nor Plaintiff has clearly described Plaintiff's objections.

On July 31, 2024, Defendant sent a letter to Plaintiff's counsel,  identifying what Defendant characterizes as "continuing deficiencies in Plaintiff's Responses and Productions," including: (a) "conversations" (FM 1-FM64) that are "cut off" between Adam Lynch and Plaintiff; (b)correspondence and messages (FM 19-22, 24-34) that "appear to include only snippets or portions of responsive communications; (c) Plaintiff's responses to RFPDs Nos. 7, 8, 10-15, 17, 19, 21, and 22 required "significant clarification;"(d) RFPD No. 5, questions related to Plaintiff's responses and document Title VII 056; (e) RFPD No. 9, questions related to Plaintiff's responses; (f) RFPD No. 18, questions related to Plaintiff's responses and "Ziprecruiter Production," "indeed.com(sic) Production," and "LinkedIn Production;" (g) RFPD No. 20, questions related to Plaintiff's responses; and (h) RFPD No.23, questions related to Plaintiff's responses. Defendant also raised issues with Plaintiff's efforts to mitigate her damages, which it termed "Incomplete Documents in Supplemental Production." As is relevant here, Defendant claims that Plaintiff produced "incomplete documents," namely Bates Nos. Title VII 001-004, Title VII 006, Title VII 032, Title VII 057, Title VII 060-64, Title VII 073, Title VII 65-69, Title VII 079, Title VII 071, Title VII 075 Title VII 077 (ECF No. 49-3, pp.3-9).  Finally, Defendant asked Plaintiff to the issue by no later than August 5, 2024. (ECF No. 49-3, p.9).

Defendant also represents that Plaintiff "did not respond to the July 31, 2024 letter until October 28, 2024" (ECF No. 49 , ¶16).[7]  According to Defendant, on October 28, 2024, Plaintiff provided a supplemental production that remained deficient, and "several of the issues Arcellx previously raised with counsel remained unaddressed." (ECF No. 49 , ¶16).  Defendant asserts that the October 28, 2024 production consisted of: (i) screenshots (Bates Nos. FM Jobs 80-FM Jobs 100); and (ii) the first page of an email from AstraZeneca that references Plaintiff's offer letter. ECF No. 49-3, p. 2).

In the Post July 31 Dhali Letter, Mr. Dhali writes that for RFPDs 7, 8, 10-15, 17, 19, 21, Plaintiff claims that she does not have within her possession, custody or control any further documents related to these requests. Dr. Dhali also writes that for documents numbered Title VII 001-004, Title VII 006, Title VII 032, Title VII 056, and Title VII 057, what she produced is "this is the only copy that the Plaintiff has." For RFPD No. 5, "the email from Astra Zeneca (AZ) concerning this offer letter is being produced and attached to the end of this document. According to the Plaintiff, there are no other documents in her possession and control. We also suspect that AZ like Arcellx also has a policy prohibiting employees from keeping their records." For RFPD 18, "the Plaintiff is making a supplemental production concerning

---

[7] The Cout does not find that to be true. The "re:" section of  ECF No. 49-4 says "Responses to Your August 12, 2024 Letter," and the first paragraph of that exhibit says "your most recent responses from October 28, 2024."

additional job searches. On the issue of cover letters etc(sic) for any applications made via zip recruiter(sic), Linkedin or indeed.com, according to the Plaintiff, she is not aware of ziprecruiter keeping copies of her cover letters, they were also sent to the respective employers to the company's webpage via any links sent to her from ziprecruiter, linkedin or indeed.com." For RFPDs 20 and 23, Mr. Dhali writes "According to the Plaintiff there are no other responsive documents." For

her production of documents numbered Title VII 060-064, Title VII 065-069, Title VII 071, Title VII 073, Title VII 075, Title VII 077, and Title VII 079, Mr. Dhali writes "These messages were inadvertently produced by the Plaintiff. Plaintiff is not relying on these messages or call logs in the prosecution of her case. Defense counsel is advised to delete these records."

On November 6, 2024, Defendant reportedly sent another letter to AJ Dhali, Esq., identifying the following: (a )that counsel reportedly "followed up five times" with counsel; (b)that Plaintiff's October [28]2024 responses were "inadequate, incomplete, or in some cases nonsensical, and require supplementation as follows," seeking supplementation for: (1) RFPD No. 5; (2)RFPD No. 18; (3) that Defendant still only had incomplete documents: Title VII 001-004, Title VII 006, Title VII 032, Title VII 057, Title VII 060-64, Title VII 073, Title VII 65-69, Title VII 079, Title VII 071, Title VII 075, Title VII 077 (ECF No. 49-4, pp. 2-5).

Defendant represents that on or about December 3, 2024 its counsel heard from Mr. Dhali that he would be withdrawing from representing Plaintiff. (ECF No. 49). According to Defendant's counsel, on December 10, 2024 and on December 16, 2024, they communicated with AJ Dhali, Esq. via email about the outstanding disputes. The Defendant asserts that Mr. Dhali suggested that the disputes had been resolved and we had "asked the client to submit the docs you seek." (ECF No. 49, ¶¶18, 19).

The parties did not provide all submissions related to any communications and agreements that they reached regarding discovery between in or about January 2025 and in or about early 2026. For example, on December 2, 2025, Plaintiff refers to an October 5, 2025 discovery letter from Defendant (ECF No. 83-3; 85-4), but neither side has provided such document to the Court. Ultimately, then, the Court infers from what it did receive (e.g., ECF Nos. 83, 85, 91, and all attachments thereto), that in November 2025-Spring 2026, the parties continued to debate whether Plaintiff had fulfilled her obligations to respond completely to RFPDs 1-23. This is consistent with the parties' bald assertions. *See, e.g.,* ECF Nos. 64, 83, 83-1, 101-3.

On November 15, 2025, Defendant served on Plaintiff its second set of RFPDs, namely RFPD Nos. 24-26. (ECF No. 85-4, pp. 1-2). Plaintiff does submit any evidence that refutes that this occurred.

### 2. *Defendant's Arguments*

As the Court understands Defendant challenges the sufficiency of Plaintiff's responses to certain RFPDs. Regarding Defendant's "First Set of Document Requests to Plaintiff," Defendant avers that Plaintiff has failed to produce complete documents (e.g., has produced a fragment of a document or a portion of an email string). According to the Defendant, many of

the "incomplete" documents could be responsive to one or more RFPDs.  Per the Defendant's Spreadsheet, the RFPDs at issue are grouped as follows: RFPD 5; RFPD 18; RFPDs 2, 3, 6 and 22; RFPDs 6, 10, 12, 19-22; RFPDs 6, 14, 17, 19-22.  Exhibit B to this Letter Opinion and Order contains verbatim recitations of the Defendant's arguments.

Regarding Defendant's  "Second Set of Document Requests to Plaintiff," Defendant asserts that Plaintiff has failed to produce any responsive documents to RFPDs 24-26. (Exhibit B).

### 3.  Plaintiff's Responses

Plaintiff repeatedly maintains that she has fully complied with RFPDs 1-23 by producing all relevant and responsive documents that  she has within her possession custody and control. *See, e.g.,*  ECF Nos. 64, 73, 83-3, 83-4, 85, 85-2, 91, 91-1. Regarding RFPDs 24-26, Plaintiff asserts that she has already responded to all of Defendant's discovery requests. (*Id.*). *See also* Exhibit B.

### 4.  Analysis

If a party serves an RFPD upon another party, Fed. R. Civ. P. 34 governs. There are several parts of Rule 34 that bear consideration. First, a party may request that the other party "produce and permit the requesting party . . . to inspect, copy, test, or sample" relevant documents or electronically stored information (ESI) that is within the party's "possession, custody or control." Fed. R. Civ. P. 34(a)1).  "Control" does not "require a party to have legal ownership or actual physical possession of any [of the] documents at issue." *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 515 (D. Md. 2009)(citation omitted). Rather, " documents are considered to be under a party's control when the party has the right, authority, or practical ability to obtain the documents from a non-party." *Id.* (further citation and internal quotation marks omitted).

Next, a party has to respond in writing within 30 days of receiving the RFPD. *See* Fed. R. Civ. P. 34(b)(2). If a party objects to an RFPD, the party must do so for a legitimate reason. Fed. R. Civ. P. 34(b)(2)(B), (C).  Again, an objection cannot be "boilerplate;" it has to be specific and particular. *Hall, supra*; *see also* Loc. R. 104.6 (D. Md. 2025).

For the party requesting discovery, as held above, a discovery request cannot be duplicative.  Thus, Plaintiff "shall not have to produce documents that [she] has already produced, **provided that [she identifies] the documents that already have been produced and the corresponding document production requests to which they are responsive**." *Victor Stanley, supra.,* 2012 WL 13012439, at *2 (emphasis supplied).  This means that Defendant cannot propound duplicative discovery requests upon Plaintiff, but it also means that Plaintiff cannot just say "I have already produced those documents to you." Instead, Plaintiff must identify the documents that she has already produced (by Bates Number, is the preferred method) and Plaintiff must identify the specific RFPD(s) to which the documents are responsive. *Victor Stanley, supra.,* 2012 WL 13012439, at *2;  *AMA Systems, LLC v. 3B Tech, Inc.*, Civ. No. JRR 21-1472, 2023 WL 2537634, at *2 (D. Md. Mar. 16, 2023)(court finds no

14

burden in requiring party to "produce documents as they are kept in the usual courts of business or [to] organize and label them to correspond to the [RFPD]"); *see also* Fed. R. Civ. P. 34(b)(2)(E)(i).

Finally, with respect to RFPDs, if the responding party gives or makes an "evasive or incomplete disclosure, answer or response," then the Court **must** treat that evasive answer or incomplete disclosure as "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4); *see also Mezu v*, 269 F.R.D. at 574. This means that if Plaintiff's document responses are evasive or incomplete, the Court can order Plaintiff to fully and completely provide responses. *See* Rule 37(a)(3)(B)(iv); Rule 37(d); *CareFirst, supra*, 334 F.3d at 402. The Court could impose sanctions against Plaintiff, including awarding attorney's fees and ordering the exclusion of evidence. *See* Rule 37(b)(2)A), Rule 37(c)(1), Rule 37(d).

5.  *Court's Additional Rulings*

It bears repeating that, in addition to the materials provided by the parties with their respective spreadsheets, the undersigned also reviewed **all docket entries** in this case. The Court finds that Plaintiff repeatedly asserts that she has filed with the court her discovery responses, but the record often does not support her narrative. For example, in ECF No. 83-3, Plaintiff contends that she docketed discovery responses on January 13, 2025 and February 6, 2025. However, the only two entries that exist on the docket for those dates are for ECF Nos. 53, 56, which remain under seal. Having reviewed these filings, there is no rational way that they can be construed as Plaintiff's answers to Defendant's discovery requests.

Next, the parties' submissions do not appear to contain a clear, straightforward picture of the timing and substance of, e.g., Plaintiff's objections to RFPD requests.

In addition, the Court further analyzed Plaintiff's arguments that Defendant has repeatedly issued duplicative discovery requests "over a 2.5 year period," and that Defendant mischaracterizes the status of discovery. *See, e.g.,* ECF Nos. 64, 73, 83-3, 83-4, 85, 85-2, 91, 91-1. After reviewing all of the entries in the docket sheet and the parties' positions featured on the Defendant's Spreadsheet, the Court finds that Plaintiff had two prior attorneys who, according to her, failed to listen to her and failed to provide discovery materials to the Defendant. Indeed, according to Plaintiff, her second attorney failed to meaningfully participate in discovery. *See, e.g.,* ECF No. 64, pp. 5-6; ECF No. 64-4, p.1; ECF No. 64-4, p. 14. If, for the sake of argument, the Court credits Plaintiff's representations about former counsel's conduct, the reasonable inference is that she could have provided documents to former counsel, but there is a gap between what those attorneys allegedly received and what was actually produced to Defendant. The record before me supports this inference. One example of this is found in ECF No. 64-2, p. 1 (December 10, 2023), where Plaintiff mentions providing pages to her first attorney from "ZipRecruiter, LinkedIn, and indeed.com," but also mentions that, at that time, she is unable to gather more information. Another example can be found in ECF No. 64-6, pp. 6, 9-12. This is a June 28, 2024 email string involving Plaintiff to former counsel with the icon "jobapplications.zip" at the top. From the record, it is unclear whether those materials were produced to Defendant. Indeed, Plaintiff's former counsel says he cannot open what she sent to him. (*Id.*).

15

Moreover, the Court further finds that the record sometimes reflects Plaintiff's view that she has made efforts to supplement the record. *See, e.g.,* ECF No. 60-1, pp. 1-14; ECF No. 85, p. 5; ECF No. 85-2, p. 1; ECF No. 91, pp. 2-3 and ECF No. 101-3, p. 3. However, the record also shows that there were some duplicates or problems with at least one of the Plaintiff's document productions. *See, e.g.,* ECF No. 64-6, p. 38. Again, the record is not entirely clear that these issues were resolved.

Based on these ambiguities and others, the Court does not find that Defendant is making duplicative requests designed to harass Plaintiff or delay litigation. Instead, the Court infers from the record before it that Defendant is trying to bridge any possible gaps between discovery sought and the discovery produced.

The Court does find that Defendant repeatedly asks Plaintiff the same questions more than once about, e.g., incomplete documents or email strings. *See* ECF No. 83-1, pp. 1-6. This November 2025 letter to Plaintiff is sent after Defendant received the Post July 31 Dhali letter. The November 2025 letter mentions many of the same topics and issues that appear to have been answered by former counsel in the Post July 31 Dhali letter, demanding full production of documents. The Court does not understand why this is the case, as set forth in my rulings below.

The record reflects that Plaintiff has produced documents that carry the following Bates Nos: (1) Title VII 001-093; (2) FM 1-FM 64; (3) FMjobs001 to FMjobs 079; (4) FM Jobs 80-FM Jobs 100; and (5) FM Jobs101-165. (ECF No. 49-1 through ECF No. 49-4; ECF No. 83-1, pp. 3-6; ECF No. 83-3, pp. 4-5; ECF No. 85-4, p. 5; ECF No. 91-2, p. 4). Plaintiff also contends that on or about January 2, 2026, she served "Supplemental Production-Consolidated Job Application Records (December 2022-2025)," which consists of "approximately 1,437 pages." (ECF No. 101-3, p. 3). There are no Bates Nos. listed for these pages. (*Id.*).

Exercising my discretion to resolve discovery disputes before me in a manner that I see fit, *see Carefirst,* 334 F.3d at 402, the Court analyzed the partes' arguments. Accordingly, the Court and makes the following findings and rulings with respect to the deficiencies identified by Defendant:

| RFPD No. | Ruling |
|---|---|
| 5 | • Having reviewed the Complaint (e.g., ¶¶ 12, 13, 31, 32), the Court finds that this request is relevant. Fed. R. Civ. P. 26(b)(1). In Count III, Plaintiff contends that Defendant paid her less than a male with whom she also worked at Astra Zeneca. Plaintiff is trying to establish that she receives lower pay than her male co-employee despite performing work "substantially equal in skill, effort, and responsibility under similar working conditions." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Va. Polytechnic Inst.,* 10 F.3d 204, 206 (4th Cir. 1993)). To defeat her claim, Defendant |

16

| RFPD No. | Ruling |
|---|---|
|  | must establish that the reason that Plaintiff was paid a different wage was due to "one of four affirmative defenses listed in the [Equal Pay Act]," i.e., because of "(1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than gender." *U.S. Equal Employment Opportunity Comm'n v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018) (citing 29 U.S.C. § 206(d)(1)).  To mount an affirmative defense, Defendant is allowed to obtain discovery about the prior terms and conditions of her employment at Astra Zeneca, including about all of the items sought in RFPD No. 5, to be able to compare her, "factor by factor" with the male she has identified. *See Strag*, *supra*, at 948.  Plaintiff's Dec. 2, 2024 argument that such information is irrelevant (ECF No 64-6, p. 136), is simply misplaced. Similarly, any argument that such information is "confidential" or "privileged" is misplaced. The documents are clearly discoverable, and there is a Stipulated Protective Order in place. (ECF No. 38).<br>• Plaintiff contends that between November 2023-February 2025 former counsel already produced the material called for by this RFPD. Plaintiff also avers that she made "pro se productions in November 2025." *See* Exhibit B. However, reviewing the record before it—including ECF Nos. 64-3, p.6; 64-6, pp.35-37; 64-6, pp.73-74—the Court cannot determine whether materials given to former counsel were produced to Defendant.<br>• Plaintiff also claims that January 2, 2026, she served "Supplemental Production-Consolidated Job Application Records (December 2022-2025), which consists of "approximately 1,437 pages." (ECF No. 101-3, p. 3). There are no Bates Nos. listed for these pages<br>• Plaintiff further asserts that "no additional responsive documents exist beyond what was already submitted. . .and this request has been fully addressed." *Id.*<br>• Given the messy state of the record, the Court hereby **ORDERS** Plaintiff to provide a **certification letter** for this RFPD**. The contents of the letter are explained below**. To the extent that she has not already done so, Plaintiff shall produce all information sought by RFPD No. 5 within her possession, custody and control. In this fashion, the Court **GRANTS** Defendant's request. |

| RFPD No. | Ruling |
|---|---|
|  | • Finally, to the extent that Defendant persists in seeking a copy of Title VII 056 from Plaintiff, the request to compel additional information is **DENIED**, provided that Plaintiff provides the certification letter. The Court so finds due to the Post July 31 Dhali Letter. That Letter makes clear: makes clear: "This is the only copy that Plaintiff has." The Court cannot "compel a party to produce documents based solely on opposing speculation and belief that responsive documents exist and that the producing party is withholding them. *Patrick v. Teasys Valley Trs., LLC*, 297 F.R.D. 248, 259 (N.D. W. Va. 2013)(internal quotation marks omitted). |
| 18 | • In this Title VII employment discrimination case, Defendant is entitled to discovery about Plaintiff's efforts to mitigate damages. *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985)(plaintiff "has a statutory duty to mitigate employer damages"); *see also Bryson v. Compucom Sys., Inc.*, No. 19-CV-1121, 2020 WL 13042300, at *3 (M.D.N.C. Nov. 16, 2020)(prior and subsequent employment history relevant to employment discrimination claims, including to establish damages). Accordingly, Plaintiff's assertion that requests for such information is "unreasonable" as materials are "confidential" or "privileged" is misplaced. <br><br>• The Court does not find this RFPD to be disproportionate to the needs of this case nor burdensome or unreasonable under Rule 26(b)(2)(C). The Court also finds that there is a Protective Order in place that addresses how confidential materials are to be handled in this litigation. *See* ECF No. 31. Next, Plaintiff fails to establish why these materials are privileged with particularized facts. *See Mezu*, 269 F.R.D. at 573; *Hall*, 231 F.R.D. at 470. <br><br>• Based on the record before it, the Court does not find that Plaintiff has "overproduced" documents responsive to this request, nor does the Court find the request to be duplicative, harassing or violative of Rule 26(b)(1), for the reasons set forth in this Letter Opinion. <br><br>• Plaintiff also represents that "No additional documents exist." Given the messy state of the record, the Court hereby **ORDERS** Plaintiff to provide a certification letter for this RFPD. To the extent that she has not already done so, Plaintiff shall produce all information sought by RFPD |

18

| RFPD No. | Ruling |
|---|---|
|  | No. 18 within her possession, custody and control. In this fashion, the Court **GRANTS** Defendant's request. |
| 2,3,6,22 | • To the extent that these RFPDs seek a "complete copy" of documents numbered Title VII 001-004, Defendant's request to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear: "This is the only copy that Plaintiff has." *See Patrick*, 297 F.R.D. at 259. |
| unclear | • Line 7 of the Defendant's Spreadsheet does not clearly identify the RFPD(s) implicated by document Title VII 006. To the extent that Defendant seeks a "complete copy" of this document, Defendant's request to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear "This is the only copy that Plaintiff has." *See Patrick*, 297 F.R.D. at 259. |
| 6,10, 12, 13, 19, 20, 21, 22 | • To the extent that these RFPDs seek a "complete copy" of a document numbered Title VII 0032, Defendant's request to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear "This is the only copy that Plaintiff has," and according to Plaintiff "there are no further responsive documents." *See Patrick*, 297 F.R.D. at 259. |
| 6,14, 17, 19, 20, 21, 22 | • To the extent that these RFPDs seek a "complete copy" of a document numbered Title VII 0057, Defendant's request to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear "This is the only copy that Plaintiff has," and according to Plaintiff "there are no further responsive documents." *See Patrick*, 297 F.R.D. at 259. |
| 6,14, 17, 19, 20, 21, 22 | • To the extent that these RFPDs seek a "complete copy" of a documents numbered Title VII 0065-69 and Title VII 079, Defendant's request to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear: "These messages were inadvertently produced by the Plaintiff. Plaintiff is not relying on these messages or call logs in the prosecution of her case. Defense counsel is advised to delete these records." |
| 6,14, 17, 19, | • To the extent that these RFPDs seek a "complete copy" of a documents numbered Title VII 071, Defendant's request |

19

| RFPD No. | Ruling |
|---|---|
| 20, 21, 22 | to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear "These messages were inadvertently produced by the Plaintiff. Plaintiff is not relying on these messages or call logs in the prosecution of her case. Defense counsel is advised to delete these records." |
| 19, 20 | • To the extent that these RFPDs seek a "complete copy" of a documents numbered Title VII 075, Defendant's request to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear: "These messages were inadvertently produced by the Plaintiff. Plaintiff is not relying on these messages or call logs in the prosecution of her case. Defense counsel is advised to delete these records." |
| 6,14, 17, 19, 20, 21, 22 | • To the extent that these RFPDs seek a "complete copy" of a documents numbered Title VII 077, Defendant's request to compel more information is **DENIED,** provided that Plaintiff provides a certification letter. The Court so rules because the Post July 31 Dhali Letter makes clear "These messages were inadvertently produced by the Plaintiff. Plaintiff is not relying on these messages or call logs in the prosecution of her case. Defense counsel is advised to delete these records." |
| 24-26 | • The Court finds that these RFPDs all seek the same type of information, namely any documents upon which Plaintiff relies to establish any emotional distress damages that she seeks in connection with the claims in the Complaint. These requests include any medical records that address her mental and physical health issues that she claims are relevant to damages. <br>• Plaintiff argues that "Defendant's request for wholesale medical records is  duplicative, overbroad and irrelevant," and that she "timely objected and requested that Defendant provide a redline to identify new. . . requests and protective order measures."  (Exhibit B). <br>• As held above, Rule 26(b)(1) allows Defendant to obtain discovery regarding any matter that is not privileged that is relevant to any party's claim or defense.  The Complaint contains vague requests for compensatory damages. (ECF No. 1, ¶¶ 27, 30, 33). However, during discovery, Plaintiff has repeatedly discussed the severe emotional distress that she has experienced both at her |

20

| RFPD No. | Ruling |
|---|---|
|  | former job and now. *See, e.g.*, ECF No. 64. There are plenty of courts that have found that "medical and psychological information sought by. . .requests for production of documents are relevant both to causation and the extent of plaintiff's alleged injuries and damages." *Carpenter v. Res-Care Health Services, Inc.*, Civ. No. 3:12-cv-08047, 2013 W 1750464, at *2 (S.D. W.Va. Apr. 23, 2013)(collecting cases in which several federal courts decided that medical records are relevant where a plaintiff alleges emotional distress or garden variety compensatory damages). Accordingly, I find that RFPDs 24-26 request relevant and discoverable information, to include medical records.<br>• Next, there is already a protective order in place,(ECF No. 31), so the Court declines to further entertain Plaintiff's vague request for additional information about "protective order measures."<br>• However, all RFPDs must be proportionate to the needs of the case under Rule 26(b)(2)(C), and the Court has an obligation to ensure that this Rule is followed. Here, I find that propounding these three RFPDs is not proportional to the needs of the case; they are duplicative. Accordingly, it is hereby ordered that by no later than **fourteen (14) days from the date of this order,** Defendant shall serve **one (1) revised** RFPD upon Plaintiff that seeks information related to emotional distress damages.<br>• As held above in this Letter Opinion and Order, the record is not entirely clear on whether Plaintiff timely objected to any of the RFPD. If Plaintiff persists in her objection, the Court will address later the question of whether she has waived her right to object. For now, **Plaintiff's response is due by no later than thirty (30) days after receiving the revised RFPD**.<br>• Finally, Plaintiff also represents that she has already produced "all responsive, no-privileged medical information relevant to emotional distress damages has been produced." (Exhibit B).  The Court hereby ORDERS that Plaintiff shall wait until receiving the revised RFPD to evaluate whether this statement remains true.  If Plaintiff persists in her view,  the Certification Letter shall also address the revised RFPD. |

#### 4. Certification Letter

For all of the RFPDs, then, the Court hereby ORDERS Plaintiff to provide a Certification Letter that comports with what is set for below.  By no later **than thirty (30) days from the date of this order**,  Plaintiff **SHALL** serve the Certification Letter on Defendant and file a copy of the same with the Court. Consistent with Rule 26(g) and the case law, Plaintiff shall:

(a) identify the dates of all document productions made in response to the RFPDs;

(b) identify the Bates numbers that correspond to each document production. If Plaintiff has failed to provide Bates numbers on documents produced (e.g., "Supplemental Production-Consolidated Job Application Records (December 2022-2025)"), she shall re-produce said documents with Bates numbers. Deadline for said production(s) is **no later than 30 days from the date of this order.**

(c) identify the Bates number or range of Bates numbers that are responsive to which RFPD(s). For example, documents numbered  "FMjobs001 to FMjobs 079" are responsive to RFPD No. 5 and/or RFPD 18.[8]

(d) sign and date the Certification Letter.

(e) for each RFPD, certify that, to the best of her knowledge, information, and belief, formed after reasonable inquiry (choose all that apply to each RFPD):

    (1) she is unable to comply with the request because this particular item or category has never existed or has been destroyed, lost, misplaced or stolen;

    (2) she has performed a reasonable inquiry by looking at all documents that she has in her custody, possession, and control[9];

    (3) she is unable to comply because the materials are not now and/or never have been in her custody or control;

    (4) she certifies that she has already produced all documents responsive to this request within her custody and control;

    (5) her response(s) to the RFPD is complete and correct;

    (6) she is aware of her duty to supplement her productions pursuant to Rule 26(e)(1), and that if she realizes that she now has additional information that changes her prior answer, you will promptly supplement her prior answer and production by no later than **30 days from the date of this order.**

Plaintiff is reminded that her failure to abide by the Court's orders could lead to the imposition of  sanctions against her. Such sanctions could include the award of attorney's fees for Defendant and precluding her from using whatever she has not disclosed  during discovery in the future (for example, in connection with a summary judgment motion, at a hearing, or at trial). *See, e.g.,* Rule 37(b)(2)(A), Rule 37(c)(1), Rule 37(d).

---

[8] *Victor Stanley, supra*, 2012 WL 13012439, at *2; *see also AMA Systems, LLC v.* 2023 WL 2537634, at *2; Fed. R. Civ. P. 34(b)(2)(E)(i).

[9] For a definition of  these terms *see Lynn, supra*, 285 F.R.D. at 361.

22

### B. Defendant's Interrogatory Requests: Interrogs. 1-4

#### 1. Defendant's Timeline of Discovery Events

Defendant asserts that on January 8, 2025, Defendant served its first set of interrogatories (Interrogs. 1-4) on  Plaintiff. Having analyzed the evidence before me, there is nothing to refute that this occurred. Indeed, Plaintiff does dispute that interrogatory requests were served on her. *See* ECF No. 83-3, p. 2; *see also* Exhibit C to this Letter Opinion and Order, which contains verbatim recitations of the Plaintiff's arguments.

#### 2. Defendant's Arguments

According to Defendant, to date, Plaintiff has provided no responses to these interrogatories.  *See* Exhibit C to this Letter Opinion and Order, which contains verbatim recitations of the Defendant's arguments.

#### 3. Plaintiff's Responses

Plaintiff contends that she has answered interrogatories propounded on her. In particular, Plaintiff  states "I have already provided all responsive materials in my possession and answered Defendant's repeated discovery requests from November 2023 through 2025, including the interrogatories served on January 8, 2025, which I filed with the Court on January 13, 2025, and followed up on February 6, 2025."  (Exhibit C).

#### 4. Analysis

If a party serves an interrogatory request upon another party, Fed. R. Civ. P. 33 governs. There are several parts of Rule 33 that bear consideration. First, an interrogatory may "relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). To the extent that a party does not object to an interrogatory, it "must . . . be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Next,  the party requesting discovery cannot make duplicative interrogatory requests. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). In addition, a party responding to an interrogatory must "furnish information available to it that can be given without under labor or expense," and must "provide information reasonably available to [the party]." *Lynn* 285 F.R.D  at 357.

Moreover a "responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). Failure to do so could result in waiver of the objection. *Lynn* 285 F.R.D  at 356.  If a party completely fails to respond to a discovery request, that party has waived her right to object to the discovery. *Jayne H. Lee*, *supra*, 173 F.R.D. at 657.

The Court first finds that there is no credible evidence in the record that supports Plaintiff's argument that she responded to Interrogs. 1-4. As held above in Section III.A.5, Plaintiff's filings on January 13, 2025 and February  6, 2025 do not relate to interrogatories. I find that Plaintiff has not established that she responded to these discovery requests. Accordingly,

23

Plaintiff has waived any right to object to Defendant's interrogatories. *See Jayne H. Lee, supra*, 173 F.R.D. at 657; *see also* Fed. R. Civ. P. 33(b)(2), (b)(4). Plaintiff must answer each interrogatory deemed relevant and proportional to the needs of the case "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

Having reviewed Interrogs. 1-4, I first find that they seek the same type of information, namely information related to Plaintiff's efforts to mitigate damages. As held above in Section III.A.5, such information is clearly relevant. However, I do not find that requiring Plaintiff to answer all four interrogatories to be proportionate to the needs of the case. I find that these interrogatories are duplicative. Accordingly, it is hereby ordered that by no later than **fourteen (14) days from the date of this order,** Defendant shall serve no more than **two (2) revised** interrogatories on Plaintiff related to her efforts to mitigate damages. **By no later than 30 days** after being served with the revised interrogatories, Plaintiff shall serve her responses on Defendant. Thereafter, Plaintiff will need to provide an additional Certification Letter to the Court shall also address the revised interrogatories.

## C. Defendant's Request for an In-Person Deposition

As an initial matter, before the Court is a lot of acrimonious back and forth on when and under what circumstances Plaintiff will be deposed. There are a lot of accusations of malfeasance or allegations of gamesmanship or of bad faith about whether there was an agreement to depose Plaintiff in person or an agreement to allow her to appear remotely for a deposition. There is a suggestion that Plaintiff provided no information to support her request to conduct a remote deposition, and there is a suggestion that there is something suspicious about Plaintiff's notes from a medical professional that were offered to support her request. There are repeated requests for documentation to support the request. There are arguments about lack of reciprocity related to when Plaintiff's deposition and others' depositions should be scheduled, and there are related accusations about multiple last-minute cancellations of depositions. There are statements about how Defendant pivoted on its justification for "demanding" that Plaintiff be deposed in person, including that there was a demand that Plaintiff cover Defendant's counsel's costs associated with cancelling her deposition at the last minute. *See, e.g.*, ECF Nos. **49**, ¶21; **58-1**, pp. 1-6; **58-2**, p. 2; **62**, pp.3-4; **62-1**, pp. 2-4; **64-2**, pp. 4, 6, 7; **64-4**; **64-5**, pp. 1-14; **64-6**, pp. 5, 39-43 45-59, 64-72, 80-83, 88, 128; **83**, p. 3; **85-3**, p.3; **85-4**, p. 8; and **91-1**, pp. 7-22. *See also* Exhibit A to this Letter Opinion and Order, which contains verbatim recitations of the parties' arguments.

I find that both sides have taken unreasonable positions on this issue, have spilled a lot of ink just for the opportunity to point fingers at each other, and cherry-picked the facts to suit their respective narratives. For instance, Plaintiff's second attorney did agree to an in-person deposition at one point in time, and the record shows that Plaintiff did provide notes from a medical professional. Thus, the Court further finds that the parties have needlessly wasted scarce judicial resources with their lengthy and repetitive filings, simply because they failed to be reasonable. The parties are again reminded that they must be civil towards each other, work together, abide by Judge Chuang's prior order (ECF No. 75), and abide by Local Rules, Appendix A, Discovery Guidelines of the United States District Court for the District of

24

Maryland, including 1a., 1c., 1d., 1f., 4a., 4b., 4c., 4d., 4e.  The parties' failure to heed this final warning will give the Court plenty of cause to impose sanctions in the future.

### 1.  Rule 30(b)(1) Notices

The record reflects that on October 30, 2023, Defendant served its initial Fed. R. Civ. P. 30(b)(1) notice of Plaintiff's deposition on Plaintiff's first counsel.  On July 31, 2024, September 6, 2024, and October 4, 2024, Defendant served such notices on Plaintiff's second counsel.  Finally, after both counsel had withdrawn from representing Plaintiff, Defendant served an Amended Rule 30(b)(1) notice of Plaintiff on  November 14, 2025 and November 17, 2025. In the Amended Notice, Defendant articulated that it wished to depose Plaintiff in person at its law firm's office in Washington, D.C. on December 2, 2025, to be recorded by a court reporter, "for as many consecutive hours and days as are required for Defendant to question the witness."  Plaintiff does not dispute that Defendant wants to conduct an in-person deposition. *See* Exhibit A to this Letter Opinion and Order, which contains verbatim recitations of the parties' arguments ("Exhibit A").  Immediately below are her specific arguments.

### 2.  Plaintiff's Arguments

Plaintiff opposes an in-person deposition, asserting that she requires  five "accommodations" under the Americans with Disabilities Act (ADA).  *See, e.g.,* ECF Nos. 75, 77, 79, 88 and attachments thereto. [10] As a preliminary matter, Plaintiff appears to believe that she is entitled to seek and receive ADA "accommodations" in connection with how the instant lawsuit proceeds, even though there is no ADA cause of action pending before the district court. Plaintiff does not cite to any caselaw to support this proposition, and the undersigned declines to adopt her reasoning.

Plaintiff contends that she has medical conditions that require her deposition to occur remotely.  Thus, the argument continues, in order to "participate safely and meaningfully in her deposition," Plaintiff requires the following five "accommodations:"  (1) "remote deposition format (e.g., Zoom); (2) ability to take multiple breaks as needed; (3) extended time to respond during symptom exacerbation;  (4) ability to remain in her residence with access to support system in the event of emergency medical needs; and (5) a schedule consistent with medically safe limitations." *See* ECF No. 79, p. 1; *see also* Exhibit A.

---

[10] Plaintiff filed a motion, ECF No. 78, seeking to have placed under seal ECF Nos. 79 and 79-1 through 79-5.  The district judge denied that request, directing the Clerk of the Court to unseal ECF Nos. 79 and 79-1 through 79-5. (ECF No. 87).  The Court also ordered Plaintiff to file ECF Nos. 79  through 79-5 on the public docket, with limited redactions, namely her personal contact information (email, phone number, and mailing address) and "text referencing specific medical diagnoses and treatment information."  (*Id.*). The Court further ordered that it would accept redacted versions of the aforementioned documents and keep under seal the unredacted versions, only if the redacted versions complied with its order. (*Id.*).  Finally, the Court ordered Plaintiff to file redacted versions by no later than December 19, 2025. (*Id.*). To date, that has not occurred. Nonetheless, in this Letter Order, the Court proceeds as if Plaintiff had complied with ECF No. 87 and refers to publicly available information.

### 3. *Rules 26(c), 30(d)(1), and 30(b)(4)*

#### a. <u>Rule 30(d)(1)</u>

Fed. R. Civ. P. 30(d)(1) provides that "unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours." However, it is equally clear that a court may exercise its broad discretion to order the terms under which Plaintiff's deposition may occur. *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 280 (D. Md. 2012)(citing *Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591, 592 (S.D.N.Y. 1994)(courts enjoy broad discretion to determine whether a deposition should occur via remote means)). Below, in Section III.C.4., the Court orders how and where the deposition will occur.

#### b. <u>Rule 26(c)(1)</u>

Because Plaintiff is *pro se*, the Court could exercise its discretion and construe Plaintiff's requests as a motion for a protective order requiring her deposition to occur remotely. *See Webb*, 283 F.R.D. at 278-79.

A court "may, for good cause, issue a [protective order] to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including. . .specifying terms, including time and place, for the. . .discovery." Fed. R. Civ. P. 26(c)(1)(B). The law is clear that the party who moves for a protective order bears the burden to establish that good cause exists. *Webb*, *supra*, 283 F.R.D at 278 (citing *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009). To meet her burden, then, Plaintiff "cannot rely upon 'stereotyped and conclusory statements.'" *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)(quoting 8A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ. § 2035* (2 ed. 1994)). Rather Plaintiff has to "present a 'particular and specific demonstration of fact' as to why a protective order should issue." *Id.* To be clear, Plaintiff needs more than "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning'" for the Court to find good cause. *Id.* (quoting *Merit Indus., Inc. v Feuer*, 201 F.R.D. 382, 384-85 (E.D. Pa. 2001)).

Here, Plaintiff first fails to provide specific demonstrations of fact as to why she needs to take multiple breaks and remain in her residence. Next, Plaintiff refers to needing "extended time to respond during symptom exacerbation," yet this phrase is vague and conclusory. The same is true for the phrase of needing "access to support system in the event of emergency medical needs;" it is a conclusory statement devoid of definition. More saliently, the medical professional's notes upon which Plaintiff relies do not offer support. Instead, the first note is so devoid of specifics as to any harm that an in-person deposition would cause. The second letter states what her medical conditions are and says " in my medical opinion her [medical condition] would be lessened by a video or Zoom deposition. I am requesting that you accommodate her medical needs." *See* ECF No. 64-6, pp. 67, 60 72. The Court finds that this note contains "broad allegations of harm," and does not contain "specific demonstrations of fact" or "articulated reasoning." Thus, the Court can find that it would be annoying, embarrassing, oppressive or burdensome for Plaintiff to appear in person. *See Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987)(when deciding whether to issue protective order requiring a remote

deposition, court held that "brief and conclusory doctor's certificate [was insufficient];" court "may not abdicate its responsibility by unquestionably accepting a doctor's summary opinions"). In sum, has failed to meet her burden to establish good cause.

      c.   Rule 30(b)(4)

Alternatively, the undersigned assumed that there is a construct under which Plaintiff could meet her burden if given more time to provide sufficiently particular information from her medical professional, which the Court could construe as satisfying her burden. Or the Court could require Plaintiff to make her medical professional available to the Defendant to obtain additional information. *See Medlin*, 113 F.R.D. at 653.  However, engaging in that exercise would further protract this litigation.

So, to move towards ending discovery,  the Court assumed, for the purposes of the argument, that Plaintiff met her burden, which means that the burden shifts to the Defendant to establish why her deposition should not be remote. *See Webb*, *supra,*  at 279 (citing *PMW Prods., Inc. v. Atlas Alchem Plastics, Inc.*, Civ. No. 5:95-CV-16BR(3), 1995 WL 843954, at *1 (E.D.N.C. Oct. 16, 1995)(if party establishes good cause for a remote deposition, burden shifts to opposing party to demonstrate why the deposition should not be remote)); *see also Jahr v. IU Int'l Corp*, 109 F.R.D. 429, 431-32 (M.D.N.C. 1986)(same).[11]

Fed. R. Civ. P. 30(b)(4) provides that  "the parties may stipulate or the court may on motion order that a deposition be taken by telephone or other remote means."  In this district, another judge has held that "[c]ourts that have considered whether to allow a deposition to be taken by remote means have focused their inquiry on whether a party opposing the remote deposition is able to make a 'particularized showing as to why a [remote] deposition would prejudice it." *U.S. v. 2003 BMW X5 SUV, VIN5UXFB93573LN80798*, Civ. No. WDQ 14-912, 2015 WL 2330292 (D. Md. May 15, 2015)(further citations omitted); *Webb*, 283 F.R.D. at 280. Under this analysis, it is still within this Court's discretion whether a remote or in-person deposition should occur. *Webb*, at 280.

Defendant first questions whether Plaintiff fails to offer a "legitimate or specific reason" that establishes good cause as to why her deposition should be remote. *See*  Exhibit A.  As held previously, the Court will assume that Plaintiff may be able to establish good cause, or that Plaintiff may be able to offer a "legitimate" reason for a remote deposition, which shifts the burden to Defendant.

Defendant next counters that it will be prejudiced if an in-person deposition at counsel's law office does not occur. In particular, Defendant asserts that counsel "has a large number of

---

[11]Even if Plaintiff had not met her burden, at least one court in this Circuit has held that Rule 30(b)(4) "does not specify the showing that a party must make for a remote deposition." *Macias v. Monterrey Concrete, LLC*, No. 3:19-CV-0830, 2020 WL 638661, at *2 (E.D. Va. Oct. 30, 2020)(further citation omitted).  The *Macias* court also held that "courts generally have held that the moving party must put forward 'a legitimate reason' to conduct the deposition remotely." *Macias*, 2020 WL 638661, at *2 (further citations omitted). If this occurs, then the burden shifts to the party who opposes the remote deposition to demonstrate prejudice. *Id.*

documents to which they intend to refer during Plaintiff's deposition, and that these documents "will be most easily and efficiently organized by counsel for Defendant, marked as exhibits by the court reporter, and presented to Plaintiff in physical form." (Exhibit A). Defendant claims additional prejudice if Plaintiff's deposition occurs remotely, namely that counsel will not be able to best observe Plaintiff's demeanor. To support its arguments, Defendant relies upon *Webb* and *2003 BMW X5 SUV*. *See* Exhibit A.

The Court first finds that *Webb* is factually distinguishable from this case. The *Webb* court first held that plaintiff failed to meet her burden for a protective order requiring a telephone deposition. This case, of course, relates to a remote deposition. The *Webb* court alternatively held that even if she had met her burden, the third-party defendant had met its burden of showing particularized prejudice because it had a voluminous number of documents that it could not effectively examine plaintiff about over the phone. Here, in contrast, the remote deposition would be by Zoom or another video platform, and some courts have approved of "document-intensive remote depositions while recognizing the challenges that they present for the parties." *Macias v. Monterrey Concrete, LLC*, No. 3:19-CV-0830, 2020 WL 638661, at *2 (E.D. Va. Oct. 30, 2020)(collecting cases).

Next, assuming that Defendant's "ability to assess the [plaintiff's demeanor] by video conference is less than it would be in person," the Court does not find that Defendant has met its burden of showing prejudice sufficient to require an in-person deposition rather than a remote one. *See Macias*, 2020 WL 638661, at *6 (citing *Learning Res., Inc. v. Playgo Toys Enters. Ltd.*, No. 19-cv-0660, 2020 WL 3250723, at *3 (N.D. Ill. June 16, 2020)("many courts have held that remote videoconference depositions offer the deposing party a sufficient opportunity to evaluate a deponent's nonverbal responses, demeanor, and overall credibility")). This is especially so because the Court believes that practical solutions exist to address the Defendant's concerns, which are outlined below in Section III.C.4.[12] Accordingly, after balancing all of the relevant facts, I do not find that Defendant has met its burden to establish particularized prejudice.

### 4. *Terms of the Deposition*

Taking all of the aforementioned into account, the Court exercises its discretion in fashioning a fair remedy that addresses the parties' concerns. Accordingly, the Court hereby orders as follows:

(a) Defendant shall be permitted to depose Plaintiff for a total of **7** hours, to be split over two different days. The days do not need to be consecutive.
(b) The first half of the deposition will occur remotely, and not last more than 3.5 hours, including 10 minutes every hour for Plaintiff to take a break.

---

[12] In *2003 BMW X5 SUV*, the Court held that when faced with "diametrically opposed statements" from witnesses about who owned a vehicle subject to forfeiture, an in-person deposition was the best way to observe the proposed person's demeanor after presenting her with documents, and to "gauge the authenticity of her responses." 2015 WL 2330292, at *2. Such factual circumstances are not present here, and there is no suggestion in that case that the court considered deposition procedures outlined herein.

(c) **By no later than 5 days before the remote deposition,** Defendant shall provide Plaintiff with a binder of the relevant exhibits to be used during the deposition.

(d) During the remote deposition, Defendant can ensure that the record is clear as to which document is the subject of questioning and confirm that there are no other individuals present (directly or indirectly).

(e) The second half of the deposition will be in person and will not last more than 3.5 hours, including 10-minute breaks every hour. The in-person deposition shall occur at the U.S. District Court-MD, 6500 Cherrywood Lane, Greenbelt, MD. The undersigned will be available to address any matters that arise during the in-person deposition. **By no later than 30 days from the date of this order,** the parties shall submit a **joint** submission to the Court identifying 3 proposed dates for taking the deposition. The Court will confirm its availability and give the parties' instructions as to the specific location in the courthouse where the deposition will occur.

(f) **By no later than 5 days before the in-person deposition,** Defendant shall notify Plaintiff whether there are additional exhibits and provide Plaintiff with a binder of the of the same for use during the deposition.

(g) Defendant is responsible for providing a court reporter for both sessions of the deposition.

## IV.   CONCLUSION

Although informal, this is a Letter Opinion and Order of the Court and shall be docketed as such.

/s/

_____

The Honorable Gina L. Simms
United States Magistrate Judge

29