# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSChambers@mdd.uscourts.gov



U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627

July 13, 2026

Re:   *Fahimeh Mirakhori  v. Arcellx, Inc.*
      Civil Action No. TDC 23-1619

### LETTER OPINION AND ORDER RESOLVING OUTSTANDING DISCOVERY-RELATED ISSUES RAISED BY PLAINTIFF

Dear Ms. Mirakhori and Counsel:

This matter has been referred to the undersigned for discovery and all related scheduling. (ECF No. 89).

Plaintiff Mirakhori ("Plaintiff") and Defendant Arcellx, Inc. ("Defendant") raised several discovery disputes in various filings, in which they sought to file motions to compel discovery from each other. (ECF Nos. 80, 82, 83, 85, 91). Plaintiff has also claimed that Defendant has engaged in "ongoing procedural abuse and discovery misconduct," contending that the Court should enter a protective order and impose sanctions against the Defendant. (ECF Nos. 73, 79, 80, 85, 88).

The undersigned reviewed the aforementioned filings, and all of the exhibits appended thereto, and scheduled and presided over a telephonic discovery dispute hearing. (ECF Nos. 94, 95, 96, 98).  This Letter Order only contains the Court's rulings related to the discovery disputes raised by the Plaintiff.[1]

During and after the last discovery dispute hearing, the Court ordered the parties to engage in *further* meet and confer conferences during which they would act in good faith to try to resolve their outstanding discovery disputes.  *See, e.g.,* ECF No. 98, pp. 5-8, 53-57; ECF No. 97, ¶2 (emphasis supplied).  In addition, if any discovery disputes remained after engaging in their conversations, the parties were ordered to read the case of *Anderson v. Reliance Standard Life Ins. Co.*, Civ. No. WDQ 11-1188, 2011 WL 4828891, at *3 (D. Md. Oct. 11, 2011), and to engage in the method/process outlined therein. (ECF No. 98, pp. 39-43).  The parties were further ordered to produce final spreadsheets that contained their final positions on unresolved discovery disputes by January 31, 2026 and documentation related thereto (following the *Anderson* method).  (*Id.*; ECF No. 97, ¶¶ 4-6).  The parties were directed to email the spreadsheets and materials that

---

[1]By separate Letter Order, the Court addresses the discovery disputes raised by Defendant.

support their respective discovery requests to my Chambers, rather than submitting the same via CM/ECF.[2]

The Court timely received from the Plaintiff a spreadsheet called "Plaintiff Final version-Jan.30-2026-FM-Mirakhori v. Arcellx, Inc. Disputed Discovery Spreadsheets (Defendant's Draft Jan. 11, 2026). (ECF No. 99). However, regrettably, Plaintiff innocently sent to the Court a spreadsheet and files in support thereto that the Court could not open. (ECF No. 100). Thus, the Court asked Plaintiff to send documents that it could access. (*Id.*). On February 20, 2026, Plaintiff timely submitted a second thumb drive of materials to the Court; however, regrettably, technological issues arose in connection with that submission. (ECF No. 106).

Ultimately, on March 26, 2026 Plaintiff submitted a thumb drive with materials that the Court could access. (ECF No. 107). The spreadsheet was called "Plaintiff Final version-Jan.30-2026-FM-Mirakhori v. Arcellx, Inc. Disputed Discovery Spreadsheets (Defendant's Draft Jan. 11, 2026)(Plaintiff's Edits Jan. 20, 2026)(Defendant's Edits Jan. 27, 2026)(4903-3152-602702)". The Excel document has two tabs: the first tab is labelled "Plaintiff list for Defendant," and the second tab is labelled "Defendant's Disputed Requests." Having reviewed the two tabs, only the first tab is relevant for this Letter Order, as the first relates to Plaintiff's claims about the sufficiency of the Defendant's discovery responses and articulates complaints about the discovery process. In issuing this Letter Order, then, I will thus refer to the relevant document as "Plaintiff's Spreadsheet."

Plaintiff's Spreadsheet contains information about: (1) the discovery requests served upon Defendant; (2) Plaintiff's allegations of how Defendant's how Defendant's responses are deficient; and (3) Plaintiff's allegations about how Defendant has "abused" the discovery process and why she seeks sanctions against it.

The Plaintiff also submitted the materials upon which she relies, which I will call "Plaintiff's Documents in Support of Spreadsheet." The following chart lists the materials received:

| **Plaintiff's Supporting Documents** |
| --- |
| Jan5 2026 Follow up on Discovery Items and Sequencing |

---

[2] The undersigned reviewed the parties' efforts to meet and confer as required by the Court's orders. (ECF Nos. 101-105, 109-111 and attachments related thereto). The Court finds that despite Judge Chuang's clear admonition that their failure to cooperate with each other in resolving discovery disputes "may result in sanctions, dismissal of this case, or default judgment" (ECF No. 75, p.3), the parties did not always behave civilly towards each other. In particular, the parties continued to accuse each other of refusing to cooperate and confer **on their terms**. (ECF Nos. 101-105, 109-111). The undersigned further finds that both sides tended to "cherry-picked" the facts to support their narratives. In sum, the undersigned declines to find that the parties earnestly complied their obligations to sincerely resolve their discovery disputes without court involvement. They certainly did not comply with Guideline 1a. of the Local Rules and there does not appear to be true compliance with Local Rule 104.7. Because the parties' Local Rule 104.7 certifications are deficient, the Court is not required to entertain either side's discovery disputes. *See generally Madison v. Howard County, Md.*, 268 F.R.D. 563, 564 (D. Md. 2010). Nonetheless, to move these parties along, the Court chose to resolve the issues before it. The Court again warns Plaintiff and Defendant that they are required to comply with all discovery-related orders issued by the Court. The parties are again warned their failure in the future to comply with the Court's order could result in the imposition of sanctions against them. *See, e.g.,* Fed. R. Civ. P. 37(b).

| Plaintiff's Supporting Documents |
|---|
| Nov 20 2025-Mirakhori v. Arcellix_Defendant's Second Set of RFPDs |
| Discovery Defense Re-Production |
| Email cover-Nov 13 2024-Service of P's set of Discovery Clarification; Plaintiff's Follow Up on Deficits in Defendant Responses-Supplemental Interrogatory and RFAs and Deposition notice. |
| Highlighted-Mirakhori v. Arcellx-Arcellx's Responses and Objections to Plaintiff's First Set of Interrogatories |
| Int. 2025-Mirakhori v. Arcellx-AArcellx's Responses and Objections to Plaintiff's Second Set of Interrogatories |
| Int.2023 Mirakhori v. Arcellx-Arcellx's Responses and Objections to Plaintiff's First Set of Interrogatories |
| Nov. 24 2025-Mirakhori v. Arcellx_Defendant's Second Set of RPFDs |
| Nov20 to matt past due-Plaintiff's Discovery (Past Due) & Defendant's "Set" (Duplicative)-Response Due Nov. 24, 2025, 2_30 p.m. ET |
| Plaintiff' Interrogatories RFAs and Notice of Deposition (which is entitled "Plaintiff's Follow-Up Discovery Clarification; Supplemental Interrogatory and RFAs, and Deposition Notice" |
| Plaintiff Supplement Response to Defendant |
| 2023 email ARC asked Kate Depo be Virtual-Fwd_Miarkhori v. Arcellx_Discovery Issues |
| Meet and Confer 12/8/23 letter from Ike E |
| notice of Deposition- Kate Atkine[3], Alex Druz and Rami Elgahandour |
| Exhibit A-Summary Table discovery violation- |
| Gmail 2-re fm-Mirakhori v. Arcellx Outstanding Discovery issues-Nov 14, 205 email |
| Notice of Intent to Seek Protective Order and Sanctions |
| RE to Deff's Letter Nov. 13-2025docx |
| for rule 104.1-7 sequencing |
| Documents called: Dec. 15 2025 Discovery; Dec. 31 2025 Request; Dec4 2025-suppl to R 37 notice; Jan 2 2026 Supplemental production; Jan 5 2025-Scope of communications; Jan 5 2026 Follow up on Discovery; Jan2-2026-Discovery Issues-Excel Temp; Jan5 2026-Proposed Schedule for Comp |
| Documents about meet and confer efforts, including Jan.28 2026 Improper Out of Turn Excel and Jan27 2026- Continued Failure to Respond; Mischaracterization 2024 ECF 64 and its exhibits |
| ECF60-Exhibits Adam Lynch |

---

[3] The Complaint refers to "Kate Atkine."(ECF No. 1). Defendant refers to her as "Kate Aiken." (Exhibit G to this Letter Opinion and Order).

| **Plaintiff's Supporting Documents** |
| --- |
| Time extension email-Mirakhori v. Arcellx_Pending Discovery Issues |
| Email cover-Dec. 13, 2025-Arcellx's Response |
| RFAs-2025-Served Nov. 13-2025 |
| Subfolder of publicly filed documents, including: ECF Nos.82-83, 85, 90-91 |
| Arcellex REPLY to 2nd R.34 |
| ECF91-Exhibit D-e-RFPCombined |
| First Set of Discovery-From Ike Emejuru |
| From AJ- Fourth Letter to Opposing Counsel (sic): November 6, 2024 letter from Defendant to AJ Dhali, Esq. |
| RFP (33-36)-Last Set- |
| RFP 2-2023-2024.01.03 Arcell'x Response |
| RFP-1 (1-15)-2023-Mirakhori v. Arcellx |
| RFP-2-Arcellex REPLY to 3rd R.34 |

In addition, attached to this Letter Opinion and Order are Exhibits D, E, F, and G, which contain the parties' verbatim summaries and arguments.   In brief, Plaintiff seeks  Rule 37(a), (c) order compelling the following: (a) Defendant to produce  documents called for by certain requests for production of documents (hereinafter "RFPDs" or "RFPD"), including "all merit-based documents supporting Defendant's asserted defenses;"(b) Defendant to respond to interrogatories (hereinafter "Interrog." or "Interrogs."); and (c) Defendant to respond to requests for admission. (hereinafter "RFAs").  Plaintiff also seeks sanctions against Defendant under various sections of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's "inherent authority."

The Court has reviewed all of the CM/ECF filings and attachments thereto listed in this Letter Opinion and Order, all documents offered by Plaintiff, and all of the CM/ECF filings and attachments thereto listed in the Defendant's Spreadsheet, regardless of who cited them. The Court also reviewed "Plaintiff's Documents in Support of Spreadsheet."  In addition, because there were incomplete submissions and such divergent views on the history of discovery requested and exchanged, in the exercise of my discretion, the undersigned also reviewed **every docket entry in this case to date (i.e., ECF Nos. 1-111).**  Thus, in issuing this Letter Order, the undersigned has reviewed every submission of record.

To be clear, the Court's ruling, then, is predicated on what the parties have chosen to docket and what the parties have chosen-selectively or otherwise-to put before it.[4]  Put another way, when resolving the disputes, the undersigned evaluated for relevance the quality and strength of the arguments and of the documents before it.

---

[4] The Court feels fairly certain that the parties assume that they provided it with more details that they actually did. For instance, ECF No. 64-3, pp. 9-143, are completely blank.

When resolving the disputes, the Court invokes its "broad discretion in resolution of discovery problems that arise in cases pending before it." *Duncan v. Costco Wholesale Corp.*, Civ. No. SAL 20-3605, 2021 WL 5827272, at *2 (D.S.C. Apr. 12, 2021) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)). Moreover, when issuing its rulings, the Court has reviewed and analyzed Local Rules 104.3, 104.6, 104.7, 104.8 and Appendix A (D. Md. 2025), Fed. R. Civ. P. 26(b)(1), Fed. R. Civ. P. ("Rule") 26(b)(2)(C)(i), Rules 26(b)(2)(C)(ii)-(iii), Rule 26(c), Rule 26(g), Rule 30, Rule 33, Rule 34, Rule 37, and the caselaw related thereto. Because the Court finds that the matters that are ripe for my consideration have been fully briefed, no additional hearing is necessary. *See* Local Rule 105.6. (D. Md. 2025).

As set forth, herein, the Court **GRANTS IN PART, DENIES IN PART**, Plaintiff's requests to compel discovery. In addition, Plaintiff's request for sanctions is **DENIED**. in the absence of clear and convincing evidence, the undersigned declines to impose sanctions against Defendant.

## I.    PROCEDURAL HISTORY

This section contains relevant information considered by the Court when resolving the discovery disputes.

By way of background, Plaintiff initiated the instant action by filing a Complaint. (ECF No. 1). At that time, Plaintiff was represented by counsel, Ikechukwu K. Emejuru, Esq. (*Id.*). Defendant's counsel entered their appearance and later, with the Court's leave, Defendant filed an Answer. (ECF Nos. 8-10, 13, 17). Subsequently, the district court held a case management conference on October 26, 2023 after which it ruled that the Scheduling Order issued would govern this case. (ECF Nos. 24, 25, 27). Per that Scheduling Order, discovery was to close on February 20, 2024. (ECF No. 25).

On December 15, 2023, the parties agreed upon the terms of two protective orders, one related to attorney-client privileged materials, and the other related to the confidentiality surrounding documents and information obtained during discovery. (ECF Nos. 28-29). The district court approved and entered a "Stipulated Protective Order." (ECF Nos. 30-31).

The record reflects that in during 2023-2024, Plaintiff had two different counsel representing her. (*See, e.g.,* ECF Nos. 1, 40). During the life of this case, Plaintiff filed documents complaining about the adequacy of their representations, including that they failed to actively participate in discovery for many months to her detriment. *See, e.g.,* ECF Nos. 36, 64, 73, 85, 91 and attachments thereto. [5] Ultimately, both counsel filed motions to withdraw, which the district

---

[5] Plaintiff has filed  letters under seal that the district court construed as her objections to Mr. Dahli's motion to her withdraw as counsel. (ECF Nos. 46, 47, 52, 53, 56). The district court then directed Mr. Dahli to respond to Plaintiff's objections, which counsel ultimately did, filing them under seal. (ECF Nos. 48,50, 51, 54). Because ECF Nos. 46, 47, 50, 52, 53, 56  remain under seal, the undersigned was careful to not reveal the substance of the same in this Letter Order. Instead, the Court analyzed Plaintiff's arguments outlined in documents not under seal, including ECF Nos. 64, 73.

court granted. (ECF Nos. 32, 33, 35, 36, 38, 40-42, 45).[6] Plaintiff sought and received additional time to try to obtain counsel, which she asserts she has been unable to do. (ECF Nos. 55, 66, 73).[7]

On September 29, 2025, Plaintiff filed a Status Report, in which she contended that Defendant's counsel had engaged in unsavory behavior, including "delaying tactics," "bad faith practices," and "improper opposition to accommodation requests." (ECF No. 73).   Plaintiff also hurled allegations of "witness tampering," and "misuse of personal information that led to harassment from third parties." (*Id.*). Plaintiff had also filed a status report three days earlier, complaining about Defendant's counsel's conduct. (ECF No. 71).   Defendant had to file its own status report later, having been unable to secure Plaintiff's cooperation in preparing a joint status report. (ECF No. 74 and attachments thereto).

Between November 19, 2025-December 4, 2025, Plaintiff made additional filings, seeking what she termed an "ADA accommodation request," and "protection" from what she characterized as "ongoing procedural abuse and discovery misconduct" by Defendant. (ECF Nos. 78, 79, 80, 82, 85 and attachments thereto).

Finally, as a practical matter, the Scheduling Order entered by the district court was extended, but ultimately lapsed a while ago. (ECF Nos. 25, 44).  Discovery was stayed to permit Plaintiff to try to obtain counsel. (ECF Nos. 55, 66). That time lapsed, followed by the appointment of undersigned to manage discovery and all related scheduling. (ECF No. 89).

Having now issued this Letter Opinion and Order and the Letter Opinion and Order related to Defendant's discovery requests, the undersigned will separately issue a Final Scheduling Order.

## II.    DISCOVERY PRINCIPLES

### A.  Relevance, Proportionality, Objections

#### 1.  Relevance

It is well settled that:

> [p]arties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need not

---

[6] *See* Court's Letter Order and Opinion resolving Defendant's requests related to Plaintiff for additional details.

[7] To date, no attorney has entered his/her appearance on behalf of Plaintiff. Thus, Plaintiff has been proceeding *pro se* since in or about December 2024.

be admissible in evidence to be discoverable.

*See* Fed. R. Civ. P. 26(b)(1).

The term "relevance" has been "broadly construed to encompass **any** possibility that the information sought **may be** relevant to the **claim** or **defense** of any party." *O'Malley v. Trader Joes East, Inc.*, Civ. No. RDB 19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020)(internal citations and quotation marks omitted)(emphasis supplied). This is a pretty low threshold. It does not matter whether that evidence is ultimately admissible at trial, nor does it matter whether one party disagrees with how the other party might be able to use that evidence at trial. The relevant inquiry is whether the information sought **may possibly be** relevant to the defense, or whether the information sought **may possibly be** relevant to a claim asserted in the Complaint. Disputes over how facts are interpreted are the province of the factfinder and are not germane to the question of whether information sought is discoverable.

As I understand it, Plaintiff brings suit against Defendant advancing three claims: Count I, Retaliation, under Title VII of the Civil Rights Act; Count II, Retaliation, under the Equal Pay Act; and Count III, Discrimination, under the Equal Pay Act. (ECF No. 1). In brief, Plaintiff alleges that because of her gender, Defendant hired her at a lesser title and compensated her at lower pay rate than a male counterpart, and when she complained to Defendant about the pay disparity and other disparate treatment, she was retaliated against and ultimately terminated. (*Id.*). Plaintiff has affirmatively prayed for damages (nominal, compensatory and punitive), including the award of "back pay, front pay, and future benefits." (*Id.*). Defendant has filed an Answer, in which it denies the allegations and asserts several affirmative defenses, including that it did not retaliate against her by firing her after she complained about gender-based discrimination (to include disparate pay) and that she was not subject to unequal pay due to her gender. (ECF No. 17).

Accordingly, the Court finds that Plaintiff may seek information from Defendant via RFPDs, Interrogs. or RFAs that helps her to understand, e.g., Defendant's affirmative defenses. Defendant is required to produce discovery, subject only to legitimate objections (e.g., relevance, attorney-client privilege, work product), provided that they are particularly made and proportional to the needs of the case. *See* Sections II.A.2, II.A.3.

### 2. Proportionality

The Court recognizes that there are limits to the production of even relevant discovery. Namely, "all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010). In other words, something may be discoverable under Fed. R. Civ. P. 26(b)(1), but it is always to be measured against the proportionality yardstick, which requires the court to consider several factors. Specifically, Rule 26 requires that "the frequency or extent of discovery" must be limited if:

> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)    the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii); *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Marrying the aforementioned principles, when analyzing whether to limit discovery, the court is to: (a) consider "the importance of the issues at stake in the action. . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Rule 26(b)(1);  and (b) whether the discovery sought runs afoul of Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). Thus, if Plaintiff's request is unreasonably cumulative or duplicative, then it is disproportionate to the needs of the case  and will be denied.

### 3.  Objections to Discovery

Any party that opposes discovery bears the burden of establishing why the discovery sought should not be allowed.  *McNulty v. Casero*, Civ. No. SAG 16-2426, 2019 WL 5454900, at *3 (D. Md. Oct. 2, 2019)("party resisting discovery generally carries the burden to 'clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules.'")(quoting, *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005)).  Put another way, a party cannot make boilerplate objections to requested discovery, merely arguing that the information sought is, e.g., "burdensome" or "vague" or "overbroad" or "irrelevant."  Rather, the objecting party making such an assertion is expected to support it with particularized facts. *See, e.g.,* Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573 (D. Md. 2010); *Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 99 (D. Md. 2003)("properly particularized showing of burden. . .identifies evidentiary facts to support claims of unfair burden or expense")(citation and internal quotation marks omitted).

Next, it is inappropriate for a party to refuse to provide discovery to the other party simply because the party believes that the other party has not adequately responded to the party's discovery requests.  There is no "simultaneous" or "mutual" exchange of discovery rule, nor is there a "tit-for-tat" rule of discovery, i.e., there is no "I-am-only-required-to-produce-discovery-to-you-if-you-produce-discovery-to-me" rule. Instead, each party is required to timely and adequately object to discovery requested or timely produce it. *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.,* 173 F.R.D. 651, 657 (D. Md. 1997). Relatedly, "the text and spirit of the discovery rules [make clear] that the existence of a discovery dispute as to one matter is not a ground to delay or withhold the taking of other discovery." *Id.*  And Local Rule 104.3 (D. Md. 2025)  makes clear that "the existence of discovery dispute as to . . .one matter does not justify the delay in taking other discovery.

In addition, the Court holds that no boilerplate objections will be allowed; words like "burdensome" or "vague" or "overbroad" or "irrelevant" or "harassing" cannot be bandied about. Instead, the party objecting has a burden to demonstrate the legitimacy of the objection. Relatedly, then, the Court finds that a party's objection to producing discovery must be particularized. For

interrogatories, this is what Fed. R. Civ. P. 33(b)(4) requires, and for RFPDs, Fed. R. Civ. P.34(b)(2) similarly requires such a response. *See also* Local Rule 104.6 (D. Md. 2025). So, for example, an objecting party can challenge the relevance of the discovery sought, or assert privilege over the discovery sought (Rule 26(b)(3), and/or argue that the requested discovery is not proportional to the needs of the case (e.g., its cumulative or duplicative or burdensome or "can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").

In sum, if an objection is not particular, the Court has the authority to find that the party has waived her/its right to object to the discovery request. *See Lynn v. Monarch Recovery, Mgmt., Inc.* 285 F.R.D 350, 356 (D. Md. 2012)("failure to state with specificity the grounds for an objection [to an interrogatory request under Rule 33(b)(4)] may result in waiver of the objection").

## B. Federal Rule of Civil Procedure 26(e)

Because discovery is dynamic, Fed. R. Civ. P. 26(e) requires a party to supplement her responses to Interrogs. and RFPDs whenever she learns that her prior disclosures or responses are "in some material respect incomplete or incorrect." Fed. R. Civ. P. 26(e), Advisory Committee Note to the 1993 amendment. In particular the Rule provides:

> A party who has made a disclosure under Rule 26(a)- or who has responded to an interrogatory, request for production, or request for admission-must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not been otherwise made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P 26(e)(1).

Thus, as the Rule makes clear, Plaintiff and Defendant must make sure that their discovery responses are and remain correct and complete, and if they are not, to correct the deficiency. *See generally Tucker v. Ohtsu Tire & Rubber Co., Ltd.* , 191 F.R.D. 495, 502 (D. Md. 2000)( (Rule 26 makes clear that producing party "is obligated to supplement its production if it learns that its prior response is in some material respect incomplete or incorrect). Thus, it is not unusual or harassing for Defendant to ask Plaintiff if Plaintiff has additional responsive discovery. Nor is it harassing to ask Plaintiff whether she has, in fact, produced all information that she has in her possession, custody and control. Plaintiff cannot ignore her ongoing duty to supplement and cannot just brush off Defendant's questions by labelling them "harassing."

9

## C.  Federal Rule of Civil Procedure 26(g)

Pursuant to Fed. R. Civ. P. 26(g), when an attorney of record or a *pro se* litigant requests discovery, discloses discovery, or responds to or objects to discovery, there are certain requirements that must be followed.   First, every request, disclosure, response or objection "must be signed." Fed. R. Civ. P. 26(g)(1).  By signing any one of the aforementioned, the person is:

> certify[ying] that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry. . . (A) with respect to a disclosure, it is complete and correct as of the time it is made; and (B) with respect to a discovery request, response, or objection it is. . .(i) consistent with these rules and warranted by an existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ.  P. 26(g)(1)(A), (B)(i)-(iii).

Before certifying her discovery responses, Defendant must "make 'a reasonable effort to assure that [she] has provided all of the information and documents responsive to the discovery demand.'" *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 503 (D. Md. 2000)(quoting Advisory Committee Notes to the 1983 amendments to Rule 26(g)).  If Defendant makes a Rule 26(g) certification that violates the Rule, "without substantial justification, the Court (on motion or *sua sponte*)  must impose an appropriate sanction." *Mancia v. Mayflower Textile Servs. Co*, 253 F.R.D. 354 357 (D. Md. 2008).

## III.    PLAINTIFF'S DISCOVERY REQUESTS

### A.  Plaintiff's Requests for Production of Documents: RFPDs 1-36

*1.  RFPDs Served on Defendant*

The Court reviewed Plaintiff's Documents in Support of Spreadsheet, as well as ECF Nos. 64, 85, 91 (and the attachments thereto).   On November 7, 2023, Plaintiff served on Defendant  "Plaintiff's First Set of Discovery to Arcellx, Inc."  This Request contained RFPD Nos. 1-15.  Defendant responded to this first request on December 7, 2023.

Thereafter, on or about December 3, 2023, Plaintiff served on Defendant  "Plaintiff's Second Set of Discovery to Arcellx, Inc." This Request contained RFPD Nos. 16-17. Defendant responded to these on or about January 3, 2024.  On or about June 21, 2024, Plaintiff served another RFPD Request on Defendant, which she called "Plaintiff's 2nd R.34 Request for Documents from Defendant Arcellx."  This Request also contained RFPD Nos. 16-17, but the language in the latter RFPDs is different from the language in the December 2023 RFPDs.  The

June 21 Request also contained RFPD Nos. 18-32. Defendant responded to the second RFPD Nos. 16-17 and RFPD Nos. 18-32 on or about July 19, 2024.

Subsequently, on or about June 28, 2024, Plaintiff served on Defendant what she called "Plaintiff's 3rd R. 34 Requests for Documents from Defendant Arcellx." This fourth Request contained RFPDs Nos. 33-34.  On or about July 19, 2024, Defendant responded to RFPDs Nos. 33-34.

Finally, Plaintiff served the fifth set of RFPDs on Defendant on or about August 14, 2024. This Request also contained RFPD Nos. 33-34, but the language in the latter RFPDs is different from the language for RFPDs 33-34 in the fourth Request.  The August 14 Request also contained RFPD Nos. 35-36. Defendant responded to this fifth request on or about September July 12, 2024.

### 2. Plaintiff's Arguments

As the Court understands it, Plaintiff asserts that Defendant's document productions have been deficient in a myriad of ways, including that Defendant: (a) has made boilerplate objections to several RFPDs; (b) has refused to produce documents relevant to their affirmative defenses; (c) has provided non-responsive documents and done a "data dump" of the same; (d) has failed to disclose witnesses; (e) has taken "materially inconsistent positions" with respect to the existence of some document while "denying RFAs in a manner inconsistent with prior responses; (f) has refused to produce "core merits discovery, including Comparator/Equal Pay/Qualifications materials."  *See* Exhibit D to this Letter Opinion and Order contains verbatim recitations of the Plaintiff's arguments.

### 3. Defendant's Responses

Defendant first maintains that it " believes that Defendant has fully complied with its obligations in the discovery process, including with respect to Fed. R. Civ. P. 26. . .responding to and producing documents in response to Plaintiff's requests for production."  Defendant also asserts that " Defendant has provided both general and specific objections to Plaintiff's discovery requests, but has provided fulsome responses to the extent Defendant found such requests unobjectionable, including by producing documents bates numbered ARCELLX_0001 to ARCELLX_2016."   Defendant further represents that "Defendant has no further responsive documents to produce, including with respect to any affirmative defense. Defendant also is not withholding any responsive documents with an intention to produce them at trial." *See* Exhibit D to this Letter Opinion and Order, which contains verbatim recitations of the Defendant's arguments.

Finally, Defendant avers that "Plaintiff has not made reasonable effort to meet and confer with Defendant regarding any outstanding discovery issues. Several times since December 30, 2025, Defendant has asked Plaintiff to meet and confer." Defendant also contends that "Plaintiff asserts that she has "already satisfied" her meet and confer obligations and has repeatedly declined to meet and confer as described by Local Rule 104.7." *See* Exhibit D.

### 4.  Analysis

As a preliminary matter, the Court has already made its finding about each party's desire for their meet and confer session to appear on their terms. *See* n. 2, *supra*.  The Court nonetheless resolved the issues raised.

If a party serves an RFPD upon another party, Fed. R. Civ. P. 34 and Local Rule 104.1 govern. First, Local Rule 104.1 makes clear that, in the absence of a court order or a stipulation by the parties,  Plaintiff is limited to 30 RFPDs.  The docket does not reflect that the district court entered an order permitting any party to exceed this number of RFPDs.  The record reflects that Plaintiff has served five (5) sets of RFPDs (not just three), and that the total amount of RFPDs propounded are at least 36-40. Because Local Rule 104.1 restricts the permissible number to 30, it would not have been inappropriate for Defendant to answer just the first 30 requests and stop. In the absence of such an objection, Defendant has stipulated  that 40 RFPDs can be served on it, or has waived its right to object. *See generally Coregis Ins. Co. v. Baratta & Fennerty, Ltd.*  187 F.R.D. 528 (E.D. Pa. 1999).  That being said, the Court could exercise its discretion and find that the extra 10 RFPDs are disproportionate to the needs of the case, and the Court could enter a protective order limiting them pursuant to Rule 26(c) and Rule 26(b)(2)(C).  The Court declines to do so.

There are several parts of Rule 34 that bear consideration. First, a party may request that the other party "produce and permit the requesting party . . . to inspect, copy, test, or sample" relevant documents or electronically stored information (ESI) that is within the party's "possession, custody or control." Fed. R. Civ. P. 34(a)1).  Next,  if a party objects to an RFPD, the party must do so for a legitimate reason. Fed. R. Civ. P. 34(b)(2)(B), (C).  Again, an objection cannot be "boilerplate;" it has to be specific and particular. *Hall, supra*; *see also* Loc. R. 104.6 (D. Md. 2025).  Here, the Court has reviewed the 40 RFPDs served on Defendant and finds some of the objections contain boilerplate phrasing, and others are more particular. Virtually all of the objections contain the phrase that the request is not "reasonably calculated to lead to the discovery of admissible evidence." That is an inappropriate basis to object, as that phrase was eliminated from Rule 26(b)(1) effective December 1, 2015. *See* Advisory Committee Notes to the 2015 Amendments to Rule 26(b).  However, for those RFPDs where Defendant asserted attorney-client privilege or work product protection, the Court does not find these objections to be boilerplate. Such language is sufficient for responding to discovery requests, provided that Defendant later makes a more particularized claim of privilege.[8]

Thus, at first blush, the Court could rule that Defendant has waived the right to object to the RFPDs that are devoid of particularized facts. *See, e.g.,* Fed. R. Civ. P. 34(b)(2)(B); *Mezu*, 269 F.R.D. at 573; *Hall*, 231 F.R.D. at  470. However, the record reflects that these RFPDs were served at a time when Plaintiff had counsel, neither of whom is available to adequately

---

[8] A party asserting attorney-client privilege must do so "with particularity for each document, or category of documents." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267. (D. Md. 2008). That being said, "neither [Rule 26] nor the advisory committee comment[s] specif[y] exactly how a party asserting privilege/protection must particularize its claim." *Id.*  In this jurisdiction, "the most common way" for a party to formally assert privilege is by using a privilege log. *Id.*

discuss the substance of any meet and confers/communications with opposing counsel about the RFPDs.  For instance, in 2024, there were several status reports filed by the parties, and filings that suggest discussions about disputes, but no clear picture on any resolution of issues. *See, e.g.,* ECF Nos. 42, 43, 64. On this record, I cannot find that Defendant complied with the law by making particularized objections, but I similarly cannot find that Defendant waived its right to object.  Furthermore, Plaintiff's refusal to meet and confer with Defendant's counsel after the matter was assigned to the undersigned, has deprived the Court of evidence to support Plaintiff's narrative.

Next, given the record, Plaintiff's *pro se* status, and the importance of the issues in this case, the Court finds that Defendant cannot just say that it "has already produced all documents to you." Instead, Defendant must identify the documents that it has already produced and must identify the specific RFPD(s) to which the documents are responsive. *Victor Stanley, supra.,* 2012 WL 13012439, at *2;  *AMA Systems, LLC v. 3B Tech, Inc.*, Civ. No. JRR 21-1472, 2023 WL 2537634, at *2 (D. Md. Mar. 16, 2023)(court finds no burden in requiring party to "produce documents as they are kept in the usual courts of business or [to] organize and label them to correspond to the [RFPD]"); *see also*  Fed. R. Civ. P. 34(b)(2)(E)(i).

The record reflects that Defendant has only produced documents with Bates Nos. ARCELLX_0001 to ARCELLX_2016. Exercising my discretion to resolve discovery disputes before me in a manner that I see fit, *see Carefirst,* 334 F.3d at 402, the Court analyzed the partes' arguments. The Court also examined each RFPD for relevance and proportionality. Accordingly, the Court and makes the following findings and rulings with respect to the deficiencies identified by Plaintiff:

| RFPD No. | Ruling |
|---|---|
| 1 | <ul><li>This request seeks relevant information.</li><li>Given the imprecise phrasing of this RFPD, the Court finds that the Defendant's identification of the documents called for by the RFPD to be reasonable.</li><li>The Defendant further asserts that it has already produced documents responsive to this request that are not subject to privilege.  To the extent that Defendant has not already done so, Defendant shall produce all information sought by this RFPDs that is  within its possession, custody and control. Defendant has a duty to supplement under Rule 26(e)</li><li>Given the messy state of the record, the Court hereby **ORDERS** Defendant to provide a **certification letter** for this RFPD**. The contents of the letter are explained below**. The certification letter is due no later than **twenty-one (21) days from the date of this order.**</li><li>If Defendant asserts attorney-client privilege(or work product) protection over documents withheld, **by no later**</li></ul> |

13

| RFPD No. | Ruling |
|---|---|
| | **than 45 days from the date of this Order,** Defendant shall provide a privilege log to Plaintiff.<br>• In sum, the request to compel is **DENIED**. |
| 2-7, 9, 11, 13 | • These requests seek relevant information.<br>• Given the imprecise phrasing of some of these RFPDs, the Court finds that the Defendant's identification of the documents called for by the RFPDs to be reasonable.<br>• Defendant further asserts that it has already produced documents responsive to one or more of these requests that are not subject to privilege. To the extent that Defendant has not already done so, Defendant shall produce all information sought by this RFPDs that is within its possession, custody and control. Defendant has a duty to supplement under Rule 26(e)<br>• Given the messy state of the record, the Court hereby **ORDERS** Defendant to provide a **certification letter** for these RFPDs**.**<br>• To the extent that Defendant has not already done so, Defendant shall produce all information sought by these RFPDs that is within its possession, custody and control.<br>• If Defendant asserts attorney-client privilege or work product protection over documents withheld, **by no later than 45 days from the date of this Order,** Defendant shall provide a privilege log to Plaintiff.<br>• In sum, the request to compel is **DENIED**. |
| 8 | • The Court finds the language in this RFPD to be vague; it is unclear whether Plaintiff only seeks documents relevant to her Retaliation claim, or whether she also seeks documents that support her Equal Pay Act claims. Thus, the Court finds that the Defendant's identification of the documents called for by the RFPDs to be reasonable.<br>• The Court hereby **ORDERS** Defendant to provide a **certification letter** for this RFPD.<br>• Defendant asserts that no responsive, non-privileged documents exist. If Defendant asserts attorney-client privilege or work product protection over documents withheld, **by no later than 45 days from the date of this Order,** Defendant shall provide a privilege log to Plaintiff.<br>• In sum, the request to compel is **DENIED** |
| 10 | • The Court finds that the objection contains boilerplate language that relies upon an outdated standard and does |

14

| RFPD No. | Ruling |
|---|---|
| | nothing to help Plaintiff understand why the information is irrelevant.<br>• More important, information sought by this RFPD could be relevant on several bases, including the Defendant's ability to pay punitive damages, which are sought in the Complaint. Accordingly, Plaintiff's request to compel is **GRANTED. By no later than twenty-one (21) days from the date of this Order,** Defendant shall produce the insurance policy/policies, including declaration page(s).<br>• The Court hereby **ORDERS** Defendant to provide a **certification letter** for this RFPD. |
| 12 | • The Scheduling Order in this case makes clear that no Rule 26(a)(1) disclosures are required. (ECF No. 25, p. 3). In addition, Rule 26(a)(3)(B) requires Defendant to make pretrial disclosure at least 30 days before trial, unless the district court orders otherwise. There is no evidence before the undersigned that requires early disclosures. Accordingly, Plaintiff's request to compel is **DENIED**. |
| 14 | • Plaintiff asserts that Mr. Elghandour had direct interactions with her and "was the primary decision-maker with respect to Plaintiff's recruitment, hiring, compensation, performance evaluation and appeal." *See* Exhibit G, Topic #5.  Plaintiff further claims that she exchanged "appeal-related communications correspondence [with him] between December 9-12, 2022, in which he stated in writing that his HR team had conducted a 'thorough investigation' of Plaintiff's complaints. . .and that 'sometimes things just aren't a good fit.'" *Id.*<br>• Crediting Plaintiff's representation, and reviewing the Complaint, the Court finds the information sought to be relevant.<br>• Defendant responds by narrowing the request to call for the production of emails and Microsoft Teams messages between Plaintiff and Mr. Elghandour.  Given the allegations in the Complaint, the Court finds this to be too narrow.  Accordingly, **by no later than thirty (30) days from the date of this Order,** Defendant shall produce any documents (e.g., memoranda, letters), text messages, and social media messages that are relevant and responsive to this request that are within its possession, custody, and control. "Control" does not "require a party to have legal ownership or actual physical possession of any [of the] documents at issue." *Goodman v. Praxair* |

15

| RFPD No. | Ruling |
|---|---|
| | *Servs., Inc.*, 632 F.Supp.2d 494, 515 (D. Md. 2009)(citation omitted). Rather, " documents are considered to be under a party's control when the party has the right, authority, or practical ability to obtain the documents from a non-party." *Id.* (further citation and internal quotation marks omitted).<br>• Regarding slack messages, on this record, the Court finds such a request to be disproportionate to the needs of the case under Rule 26(b)(2)(C)(i).<br>• The Court hereby **ORDERS** Defendant to provide a **certification letter** for this RFPD.<br>• If Defendant asserts attorney-client privilege or work product protection over documents withheld, **by no later than 45 days from the date of this Order,** Defendant shall provide a privilege log to Plaintiff.<br>• In sum, this request to compel is **GRANTED IN PART**. |
| 15-17 | • In issuing this Ruling, the Court refers to RFPD Nos. 15-17 that are part of Plaintiff's First and Second RFPD requests. All of these relate to Madhu Pandey.<br>• There is already a stipulated protective order in place.<br>• Regarding RFPDs 16-17, the Court agrees with Defendant that they are duplicative of RFPD No. 15.<br>• However, Defendant asserts that it has already produced materials that are relevant and responsive to these RFPDs.<br>• The Court hereby **ORDERS** Defendant to provide a **certification letter** for these RFPDs.<br>• In sum, the request to compel is **DENIED.** |
| | **"Plaintiff's 2nd R.34 Request for Documents from Defendant Arcellx."** This is actually the Third RFPD Request. |
| 16 | • As the Court understands it, the information seeks a copy of Defendant's manual(s) or book(s) containing its policies related to equal treatment or opportunity in the workplace for all employees, anti-discrimination, and anti-retaliation measures for people who complain about discriminatory treatment. Thus, this RFPD calls for relevant information<br>• Regarding the breadth of the request, the Court finds relevant  any policies in place before, at the time that Plaintiff was an employee, and immediately after Plaintiff was an employee.  The Court finds that the two-year period before Plaintiff began working for Defendant is reasonable and the one-year period after Plaintiff ceased |

| RFPD No. | Ruling |
|---|---|
| | working for the Defendant.  Such information is relevant to notice and does not run afoul of Federal Rule of Evidence 407.<br>• However, Defendant asserts that it has already produced materials that are relevant and responsive to these RFPDs.<br>• The Court hereby **ORDERS** Defendant to provide a **certification letter** for this RFPD.<br>• In light of the Court's ruling, Defendant may have a duty to supplement under Rule 26(e). Accordingly, any such supplementation is due by no later than **30 days from the date of this order.**<br>• In sum, this request is **GRANTED IN PART**. |
| 17-18 | • The Court has reviewed these RFPDs and the Complaint and agrees with Defendant.  In addition, under Rule 26(b)(2)(C), the Court does not find this request to be proportionate to the needs of the case. Accordingly, Plaintiff's request to compel is **DENIED**. |
| 19-21, 23, 30, 31, 33 | • These requests seek relevant information.<br>• Given the imprecise phrasing of some of these RFPDs, the Court finds that the Defendant's identification of the documents called for by the RFPDs to be reasonable.<br>• Defendant further asserts that it has already produced documents responsive to one or more of these requests that are not subject to privilege.  To the extent that Defendant has not already done so, Defendant shall produce all information sought by this RFPDs that is within its possession, custody and control. Defendant has a duty to supplement under Rule 26(e)<br>• Given the messy state of the record, the Court hereby **ORDERS** Defendant to provide a **certification letter** for these RFPDs**.**<br>• To the extent that Defendant has not already done so, Defendant shall produce all information sought by these RFPDs that is  within its possession, custody and control.<br>• If Defendant asserts attorney-client privilege or work product protection over documents withheld, **by no later than 45 days from the date of this Order,**   Defendant shall provide a privilege log to Plaintiff.<br>• In sum, the request to compel is **DENIED.** |
| 22 | • The Court agrees that this request is vague (I am not clear on what "implicating" means), and  overbroad (calls for potentially irrelevant conversations), making it disproportionate to the needs of the case under Rule |

| RFPD No. | Ruling |
|---|---|
| | 26(b)(2)(C).  Accordingly, Plaintiff's request to compel is **DENIED**. |
| 24 | • The Court agrees that this RFPD as drafted is overbroad as to scope; the time frame is too long and the request calls for settlement agreements in any type of discrimination case (not just one alleging retaliation in violation of the Equal Pay Act or Title VII or discrimination against women under the Equal Pay Act). While it is true that such information may not be admissible at trial to prove liability (FRE 408), if limited in scope, it may be relevant and admissible under FRE 404(b) to prove, e.g., a pattern of discriminatory pay practices against women.  In addition, discovery is broadly interpreted to include permitting Plaintiff to obtain any information relevant to her claims or to rebut the Defendant's defenses. *Trader Joes East, Inc.*, 2020 WL 6118841, at *3.  Thus, if the Defendant asserts a legitimate, discriminatory reason for paying Plaintiff differently and/or for terminating her, such information could be relevant to establish pretext (e.g., Defendant has a history of paying women differently or firing women who complain about pay). <br> • Accordingly, **by no later than thirty (30)  days from the date of this Order,** Defendant shall produce any settlement agreements related to Equal Pay Act and Title VII lawsuits by women involving discrimination and retaliation. The applicable time period is any settlement agreements entered into one year before Plaintiff's employment and during the time that Plaintiff was employed by Defendant. <br> • There is already a protective order in place governing such information. <br> • In sum, this request to compel is **GRANTED IN PART**. |
| 25, 26 | • The Court agrees that these are duplicative of RFPDs Nos. 15-17. <br> • In sum, the request to compel is **DENIED** |
| 27-29, 34 | • Reviewing the Answer in this case, it contains denials, assertions of lacking "sufficient knowledge and information to form a belief" as to Plaintiff's allegations, and general assertions of  affirmative defenses.(ECF No. 17). In short, it does not provide a clear sense of Defendant's affirmative defenses. <br> • Under Rule 26(b)(1), Plaintiff is entitled to discover information that is not privileged, relevant, and |

| RFPD No. | Ruling |
|---|---|
| | proportional to the needs of the case upon which Defendant intends to rely to establish its defenses.  Thus, the Court interprets this to require Defendant, at a minimum, to turn over all documents (electronic, paper, etc.) upon which it intends to rely to establish the same. The Court further interprets Rule 26(b) to permit Plaintiff to depose Defendant's employees under Rule 30(a)(1), Rule 30(b)(6) to probe the bases for their defenses.<br>• Defendant has stated that it has produced all has produced documents responsive to the RFPDs propounded upon it that are not subject to attorney-client privilege or work product protection.<br>• Balancing the equities in this case, the Court hereby **ORDERS** Defendant to provide a **certification letter** for all RFPDs. In addition, if Defendant asserts privilege/work product over any documents withheld, Defendant shall provide a privilege log, as set forth herein.<br>• The Court further **ORDERS** that **by no later than 21 days from the date of this order**, the Defendant shall provide a short letter in which it articulates its affirmative defenses. |
| | **"Plaintiff's 5th R.34 Request for Documents from Defendant Arcellx."** |
| 33 | • The Court agrees with the Defendant that these RFPDs have imprecise phrasing.  Accordingly, the Court finds that this RFPD seeks relevant information about documents (e.g., emails, letters, memoranda, Microsoft Teams messages) to/from Ms. Aiken and Arcellx employees about Ms. Mirakhori. The information from/to Ms. Aiken, who is named in the Complaint, is certainly relevant, as it is information related to the claims in the Complaint. (*See, e.g.,* ECF No. 1,¶¶ 9, 19-33).<br>• However, the Court agrees that this RFPD as drafted is overbroad as to scope (time period). The Complaint identifies  December 7, 2022 as the date that Defendant fired Plaintiff. Thus, the Court narrows the period of time to refer to request for documents from November 2022-February 28, 2023 as being proportionate to the needs of the case. Rule 26(b)(2)(C).<br>• To the extent that Plaintiff believes the request covers email or texts on a personal device belonging to Ms. |

| RFPD No. | Ruling |
|---|---|
| | Aiken, Plaintiff has not met her burden to establish that such information is proportional to the needs of the case. *Shackleford v. Vivint Solar Dev., LLC*, Civ. No. ELH 19-954, 2020 WL 6273892, at \*5 (D. Md. Oct, 26m 2020)(request that entity produce responsive text messages on personal cell phones of senior management unduly burdensome and otherwise not proportionate to the needs of the case).<br>• Accordingly, **by no later than thirty (30)  days from the date of this Order,** Defendant shall produce all documents within its possession, custody and control, consistent with this ruling.<br>• If Defendant asserts attorney-client privilege or work product protection over documents withheld, **by no later than 45 days from the date of this Order,**   Defendant shall provide a privilege log to Plaintiff.<br>• In sum, this request to compel is **GRANTED IN PART**. |
| 35 | • The Court agrees with the Defendant that the RFPD has imprecise phrasing.  Accordingly, the Court finds that this RFPD seeks relevant information about documents (e.g., emails, letters, memoranda, Microsoft Teams messages) exchanged between Plaintiff's supervisors and Ms. Aiken and/or Ms. Tan  and/or Arcellx employees about Ms. Mirakhori about the subject matter/topics raised in the Complaint.<br>• However, the Court agrees that this RFPD as drafted is overbroad as to scope (time period). The Complaint identifies  dates of in or about June 2022 until in or about December 2022. Thus, the Court narrows the period of time to refer to request for documents for the period of June 2022-February 28, 2023 as being proportionate to the needs of the case. Rule 26(b)(2)(C).<br>• If Defendant asserts attorney-client privilege or work product protection over documents withheld, **by no later than 45 days from the date of this Order,**   Defendant shall provide a privilege log to Plaintiff.<br>• In sum, this request to compel is **GRANTED IN PART**. |
| 36 | • The Court agrees with the Defendant that these RFPDs have imprecise phrasing.  Accordingly, the Court finds that this RFPD seeks relevant information about emails, video conferences, letters, memoranda, Microsoft Teams messages) between Plaintiff and Ms. Aiken. The information is certainly relevant, as it is information related to the claims in the Complaint. |

| RFPD No. | Ruling |
|---|---|
|  | • Accordingly, **by no later than thirty (30)  days from the date of this Order,** Defendant shall produce all documents within its possession, custody and control, consistent with this ruling.<br>• If Defendant asserts attorney-client privilege or work product protection over documents withheld, **by no later than 45 days from the date of this Order,**  Defendant shall provide a privilege log to Plaintiff.<br>• In sum, this request to compel is **GRANTED IN PART**. |

### 4. *Certification Letter*

For all of the RFPDs, the Court has ordered Defendant to serve on Plaintiff and file on the docket a Certification Letter that comports with what is set for below. Consistent with Rule 26(g) and the case law, Defendant shall:

(a) identify the dates of all document productions made in response to the RFPDs;
(b) identify the Bates numbers that correspond to each document production. If Defendant produces additional documents, said documents shall also contain  Bates numbers.
(c) identify the Bates number or range of Bates numbers that are responsive to which RFPD(s).[9]
(d) sign and date the Certification Letter.
(e) for each RFPD, certify that, to the best of its or counsel's knowledge, information, and belief, formed after reasonable inquiry (choose all that apply to each RFPD):

    (1) Defendant is unable to comply with the request because this particular item or category has never existed or has been destroyed, lost, misplaced or stolen;
    (2) Defendant has performed a reasonable inquiry by looking at all documents that it has in her custody, possession, and control;[10]
    (3) Defendant is unable to comply because the materials are not now and/or never have been in its custody or control;
    (4) Defendant certifies that it has already produced all documents responsive to this request within its possession, custody and control;
    (5) Defendant's response(s) to the RFPD is complete and correct;
    (6) Defendant is aware of its  duty to supplement productions pursuant to Rule 26(e)(1).

---

[9] *Victor Stanley, supra*, 2012 WL 13012439, at \*2; *see also AMA Systems, LLC v.* 2023 WL 2537634, at \*2; Fed. R. Civ. P. 34(b)(2)(E)(i).
[10] *See also Lynn, supra*, 285 F.R.D. at 361.

Defendant is reminded that its failure to abide by the Court's orders could lead to the imposition of sanctions, including precluding Defendant from using whatever Defendant has not disclosed during discovery in the future (for example, in connection with a summary judgment motion, at a hearing, or at trial). *See, e.g.,* Rule 37(b)(2)(A), Rule 37(c)(1), Rule 37(d).

## B. Plaintiff's Interrogatory Requests

### 1. *Interrogatories Served on Defendant*

On November 7, 2023, Plaintiff's former counsel served Interrogs. Nos. 1-16 on Defendant. On December 7, 2023, Defendant responded to those interrogatories. S*ee* Plaintiff's Documents in Support of Spreadsheet (specifically, "Highlighted-Mirakhori v. Arcellx-Arcellx's Responses and Objections to Plaintiff's First Set of Interrogatories)." *See also* Exhibit E to this Letter Opinion and Order, which contains verbatim recitations of the parties' arguments.

The record further reflects that on or about November 13, 2025, Plaintiff served on Defendant thirty-seven (37) interrogatories. *See* Plaintiff's Documents in Support of Spreadsheet, specifically *"*Plaintiff' Interrogatories RFAs and Notice of Deposition --which is entitled 'Plaintiff's Follow-Up Discovery Clarification; Supplemental Interrogatory and RFAs, and Deposition Notice.'" Plaintiff required a response date six days later. (*Id.*). This latter request also contained RFPD Nos. 1-16, but the language in this latter request is different from the language in Interrogs. 1-16 for the November 2023 request. The latter request ("Nov. 2025 Interrogatories) also contains Interrogs. 17-37, which are new. Defendant objected to these interrogatories on December 12, 2025. (*Id.*).

### 2. *Plaintiff's Arguments*

Plaintiff asserts that Defendant has "adopted a uniform strategy of refusing to answer any interrogatory that would require disclosure of facts supporting its defenses, internal decision-making, or document authenticity, relying instead on boilerplate objections, numerical-limit arguments and conclusory claims of burden." (Exhibit E). To defend the short timeframe given for Defendant to respond, Plaintiff contends that "the response deadline applied by Plaintiff mirrored the same compressed deadlines Defendant previously imposed on Plaintiff." (*Id.*).

### 3. *Defendant's Responses*

Defendant first avers that it properly responded and objected to Interrogs. 1-16. Defendant also contends that many of these Interrogs. "contained discrete subparts, which when counted in the aggregate exceeded 25 written interrogatories. Next, regarding the November 13, 2025 Interrogs, Defendant timely served its objections thereto. Furthermore, Defendant declined to answer these Interrogs. Specifically, Defendant asserted specific objections and generally objected that because the total number of interrogatories served exceeded what the Rules require-- and Plaintiff failed to seek leave of court—Defendant was not required to answer these 37 interrogatories. (Exhibit E).

### 4. Analysis

If a party serves an interrogatory request upon another party, Fed. R. Civ. P. 33 governs. First, Rule 33(a)(1) makes clear that, in the absence of a court order or a stipulation by the parties, Plaintiff is limited to 25 interrogatories  The docket does not reflect that the district court entered an order permitting any party to exceed this number of interrogatories, nor does it reflect that Plaintiff sought leave to serve more than 25 interrogatories.   The record shows that Plaintiff has served  47 interrogatories.

The Court first finds that because Defendant believed that Plaintiff exceeded the permissible number of interrogatories, "the appropriate course of action [would be] to either move for a protective order before answering the interrogatories, or 'answer up to the numerical limit and object to the remainder without answering.'" *Mondragon v. Scott Farms, Inc.*, 329 F.R.D. 533, 541(E.D.N.C. 2019)(quoting *Capacchione v. Charlotte-Mecklenburg Schs.*, 182 F.R.D. 486, 493 n.4 (W.D.N.C. 1998)(further citation omitted)).   Had Defendant chosen to answer "some or all of the allegedly excessive interrogatories, it waives its objection that the requesting party has violated Rule 33's limit." *Mondragon*, 329 F.R.D. at 541(quoting *Knit With v. Knitting Fever, Inc.*, 2010 WL 11474937, at *1 n. 2.)(E.D. Pa. Jan. 22, 2010).

The Court examined Interrogs. 1-16 ("November 2023 Interrogatories").  The Court finds that Interrogs. 1-4, 6, 7, 10, 11, 13 are fairly straightforward, and while some are a bit linguistically inartful, I do not find that these contain multiple subparts.  Thus, Defendant was required to object or respond. Defendant has done so. (Exhibit E). [11]

Regarding Interrogs. 5, 14, and 16, the Court finds that they are somewhat duplicative of each other and contain what can only be construed as multiple subparts or compound questions. Interrogs. 8, 9, 12, and 15 contain multiple subparts/compound questions. At first blush, then, the Court understands why Defendant asserted its belief that the 25-interrogatory limit had been exceeded because it did not want to risk waiver.  That being said, that does not end the Court's analysis.

According to one legal treatise, "it would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of an area inquired about may be disputable.  On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of [Rule 33(a)(1)'s] limitation. 8B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2168.1 (3rd ed. 2020).

---

[11] The record reflects that Nov. 2023 Interrogatories were served at a time when Plaintiff had counsel, who is not available to adequately discuss the substance of any meet and confers/communications with opposing counsel about the same.  As held above, in 2024, there were several status reports filed by the parties, and filings that suggest discussions about disputes, but no clear picture on any resolution of issues. *See, e.g.,*  ECF Nos. 42, 43, 64. On this record, I cannot find that Defendant complied with the law by making particularized objections, but I similarly cannot find that Defendant waived its right to object.  Furthermore, Plaintiff's refusal to meet and confer with Defendant's counsel after the matter was assigned to the undersigned, has deprived the Court of evidence to support Plaintiff's narrative.

The Court could analyze Interrogs. 5, 8, 9, 12, 14, 15, and 16. Even if I found that each is designed to elicit details about a common theme and should be treated as a single question, an issue still remains about Interrogs 1-16 and Interrogs. 31-37. *See* Nov. 2025 Interrogs. Some of these contain subparts and compound questions; even if the Court liberally construes some as touching upon a common these, mathematically speaking, I find that the total number of interrogatories served exceeds 30.

The Court could have gone through the Nov. 2025 Interrogs. and struck any of them that exceeded a total number of 30. However, Because Plaintiff is *pro se*, the Court will permit Plaintiff an opportunity to choose no more than 30 interrogatories that she wishes to propound on Defendant. Plaintiff is hereby cautioned to ensure that the language of those interrogatories is consistent with the law. Similarly, if Defendant objects to any of the interrogatories, it is hereby cautioned that those objections must be particular as required by law.

Accordingly, the Court denies Plaintiff's motion to compel Defendant to respond to the Interrogatories, as currently drafted. It is further ordered that **by no later than 30 days from the date of the Order**, Plaintiff will be permitted to serve no more than **thirty (30)** interrogatories on Defendant. **By no later than 30 days** after being served with the interrogatories, Defendant shall serve its responses on Plaintiff.

## C. Plaintiff's Requests for Admissions

### 1. *Requests for Admission Served on Defendant*

The record reflects that on or about November 13, 2025, Plaintiff served on Defendant thirty-nine (39) interrogatories. *See* Plaintiff's Documents in Support of Spreadsheet, specifically *"Plaintiff' Interrogatories RFAs and Notice of Deposition --which is entitled 'Plaintiff's Follow-Up Discovery Clarification; Supplemental Interrogatory and RFAs, and Deposition Notice;'" see also* Exhibit F to this Letter Opinion and Order, which contains verbatim recitations of the parties' arguments. Plaintiff required a response date six days later. (*Id.*). Defendant objected to these interrogatories on December 12, 2025. (*Id.*).

### 2. *Plaintiff's Arguments*

Plaintiff first argues that Defendant failed to timely respond to the RFAs. Plaintiff next avers that:

> Defendant's RFAs responses mirror the same improper, boilerplate
> objection pattern used in RFPs and interrogatories. Defendant
> selectively refused to admit or deny facts already established by
> documents (RFAs 1-6), particularly those undermining asserted
> defenses (Denial of binary facts), while invoking numerical limits
> incorrectly and inconsistently. This conduct violates Rules 26(g),
> 36(a), and 37 and demonstrates a uniform obstruction strategy across
> all discovery vehicles. Detailed RFA-by-RFA examples and

24

objection typologies are documented in Plaintiff's Appendix Excel sheet and accompanying PDFs. Namely: Noise over substance dominated in all Defendant responses across RFP, Interrogatories and RFAs: Improper objections, Boilerplates, Misuse of numerical limits selectively vetoed responses for merit-based requests alltogether, Hyper-technical parsing, Refusal to narrow issues and expand scope or asked for more documents even with supplemented over-productions from Plaintiff, Delay and burden-shifting. This strengthens Plaintiff credibility that the conduct is systemic, not accidental. Responses to this RFA set matches exactly the same trends seen in: Request for production, and Intrrogatories. Numerical-limit arguments were misapplied to avoid admitting or denying defense-critical facts.

(Exhibit F).

Plaintiff also asserts "Rule 36 specific violations (RFA Nos. 2, 3, 5–9, 11–13, 15–18, 21–27, 35+): Global boilerplate objections, Serial claims of vagueness/ambiguity, misuse of numerical limit, denial of binary facts established by documentations (RA 1-6, 26), and Improper Relevance Objections to RFAs Nos (7, 10, 16, 18, 19–25, 34–39): Conduct mirrors RFPDs and Interrogatories; reinforces obstruction strategy." (*Id*).

### 3. Defendant's Responses

Defendant first avers that it timely responded to the RFAs. Defendant next asserts that:

> Defendant responded to Plaintiff's requests for admission within 30 days of receipt, on December 12, 2025, as required by Fed. R. Civ. P. 36(a)(3). Defendant provided general objections, but also specific objections to each request for admission, and to the extent Defendant was able to respond or determined a request for admission was unobjectionable, Defendant provided responses to the first 30 requests for admission issued by Plaintiff, counting each distinct part of each numbered request. Local Rule 104.1 limits the number of requests for admission to 30, other than requests propounded to establish authenticity or the fact that documents constitute business records. Defendant objected to and did not provide responses to any of the requests for admission which, after counting parts, exceeded 30.

(Exhibit F).

### 4. Analysis

If a party serves RFAs upon another party, Fed. R. Civ. P. 36 and Local Rule 104.1 apply. First, pursuant to Fed. R. Civ. P. 36(a)(3)(1)(A)-(B), Plaintiff may submit a RFA

25

regarding "the truth of any matters within the scope of Rule 26(b)(1) relating to (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Upon service of an RFA, a party must respond within 30 days. Rule 36(a)(3). The Defendant timely responded to the RFAs served. Defendant is only required to respond in a "shorter or longer time" if the parties have so stipulated. (*Id.*). There is no evidence before me that Defendant affirmatively agreed to respond within 6 days.

Regarding Local Rule 104.1, the Rule is clear that, in the absence of a court order or a stipulation by the parties, Plaintiff is limited to 30 RFAs, "other than RFAs propounded for the purpose of establishing the authenticity of documents or the fact that documents constitute business records." The docket does not reflect that the district court entered an order permitting any party to exceed this number of RFA, nor does it reflect that Plaintiff sought leave to serve more than 30 RFAs. The record reflects that Plaintiff has served 39 RFAs. The Court first finds that because Defendant believed that Plaintiff exceeded the permissible number of RFAs, its answer to RFA Nos. 28-39 was proper.

The Court analyzed the RFA. The Court first finds that Defendant has provided denials to RFA Nos. 1 & 4. Thus, any further request to compel further answers is **DENIED**.

The Court next finds that RFA Nos. 2, 3, 5, 10, 11, 12, 14, 17 and 26 are a bit confusing, containing compound and unclear phrases. Thus, the Court finds that Defendant has reasonably interpreted them consistent with the claims in the Complaint and provided a reasonable answer. Thus, any further request to compel further answers is **DENIED**.

Regarding RFAs 6-9, 13, 15, 16, 18, 19, 21, 22-25 and 27, the Court agrees with Defendant that they are vaguely worded. Regarding RFAs 28-39, many of them share the same inartful drafting that makes them vague in meaning. Because Plaintiff is *pro se* --and considering the importance of the issues in the lawsuit--the Court will exercise its discretion and permit Plaintiff to revise and reissue RFA Nos. 6-9, 13, 15, 16, 18, 19, 21, 22-25 and 27. Regarding RFA Nos. 28-39, the Court exercised its discretion and assumed that Plaintiff filed leave of court to serve a limited number of RFAs in excess of the number allowed under Local Rule 104.1. Thus, the Court permits Plaintiff to revise and reissue these RFA Nos., too. *Shackelford v. Vivint Solar Developer, LLC*, Civ. No. ELH 19-954, 2020 WL 5203340, at *5 (D. Md. Sept. 1, 2020). Accordingly, the Court **DENIES** Plaintiff's motion to compel responses to RFAs Nos. 6-9, 13, 15, 16, 18, 19, 21, 22-25, 27-39 ("revised RFAs"), as currently drafted. It is further ordered that Plaintiff will be permitted to serve these revised RFAs on Defendant **no later than 30 days from the date of this Order.** It is further ordered that **by no later than 30 days** after being served with the interrogatories, Defendant shall serve its responses on Plaintiff. Defendant is reminded that it may object pursuant to Rule 36(a)(5) to the revised RFA(s) only "if it states a legitimate basis for doing so." *Lynn*, 285 F.R.D at 363. Defendant is further warned that "a court may deem a matter admitted when the objecting party's answers are evasive or fail to respond to the substance of the question." *U.S. v. EEOC v. Balt. Cnty.*, Civ No. L07-2500, 2011 WL 5375044, at *2 (D. Md. Nov. 7, 2011)(further citation omitted). The Court will not tolerate gamesmanship "in the form of non-responsive answers." *House of Giant of Md., LLC*, 232 F.R.D. 257, 262 (E.D. Va. 2005).

26

**D. Depositions**

1. *Depositions of Kate Aiken and Alex Druz*

Plaintiff submitted a document that reflects that her first attorney, Mr. Emejuru, noticed the depositions of three individuals: Kate Atkine (Kate Aiken), Alex Druz, and Rami Elghandour on December 11, 2023.  The notice appears to have been served via email. *See* "notice of Deposition- Kate Atkine, Alex Druz and Rami Elgahandour."  Defendant counters that it "is and always has been willing to permit the deposition (sic) of Laura Tan, Alex Druz, and Kate Aiken," but maintains that it was not served with notice. *See* Exhibit G, Topic #5.  Given the parties' conduct in this case, and the record before it, the Court cannot fully credit either party's representations about whether Defendant received notices for Aiken, Druz, and Elgahandour. Regardless, the Court grants Plaintiff's request to compel the depositions of Kate Atkine and Alex Druz.  The Court further ORDERS:

(1) **By no later than three weeks from the date of this order**, Defendant shall provide Plaintiff with possible dates in **August- September 2026** for them to be deposed.
(2) Plaintiff may elect whether she wants the depositions to proceed in-person or remotely (video or telephone).
(3) **By no later than 5 days before each person's deposition,**  Plaintiff shall provide Defendant with a binder of the relevant exhibits to be used during each person's deposition.
(4) Each deposition shall not last more than seven (7) hours.
(5) All other Rules of Civil Procedure and Local Rules related to depositions remain in effect.

2. *Other Depositions*

Finally, Plaintiff has stated that she reserves the right to depose other individuals. It is unclear whether she includes Laura Tan in that list. Defendant has stated that it does not object to Plaintiff deposing Laura Tan.

Accordingly, **by no later than three weeks from the date of this order**, Plaintiff shall serve notices of depositions on Defendant, identifying possible dates in August-September 2026 for those depositions.  If Defendant has a legitimate objection to any notice, Defendant shall provide particularized facts to support its claims.  *See, e.g., Thompson*, 219 F.R.D. at 99 ("properly particularized showing of burden. . .identifies evidentiary facts to support claims of unfair burden or expense")(citation and internal quotation marks omitted).  Should disagreements about objections arise, consistent with Rule 37(b), the Court hereby ORDERS the parties to meet and confer regarding the same. Frankly, the Court believes that the parties should use a video platform (like Zoom) or a court reporter to record their meet and confers. The Court's expectation is that the parties are reasonable and will be able to resolve any disputes without court intervention.

Finally, Rulings (2) through (5) in Section III.D.1 apply to those depositions.

### 3. *Deposition of Rami Elghandour*

Plaintiff asserts that Mr. Elghandour had direct interactions with her and "was the primary decision-maker with respect to Plaintiff's recruitment, hiring, compensation, performance evaluation and appeal." *See* Exhibit G, Topic #5. Plaintiff further claims that she exchanged "appeal-related communications correspondence [with him] between December 9-12, 2022, in which he stated in writing that his HR team had conducted a 'thorough investigation' of Plaintiff's complaints. . .and that 'sometimes things just aren't a good fit.'" *Id.*

Defendant objects to Mr. Elghandour's deposition, claiming that he had "minimal involvement with the ultimate decision to terminate Plaintiff's employment with Defendant." In addition, in essence, Defendant complains, in a boilerplate fashion, that "deposition in this matter would significantly burden Defendant and Defendant's CEO, by distracting and taking away from his many other obligations and duties to Defendant." *Id.* Defendant also suggests, again, in a boilerplate fashion and with speculation, that "the information that Plaintiff might seek from Defendant's CEO could be more fulsomely available, with more convenience and less burden to Defendant, through witnesses who do have specialized knowledge related to Plaintiff's employment with Defendant, such as [Tan, Druz, and Aiken]." *Id.*

The Court first find that if Plaintiff has evidence to support her representations, then Mr. Elghandour's testimony would certainly be relevant to helping her establish her claims under Rule 26(b)(1). However, at this juncture, she has not put any evidence before this Court (e.g., emails or documents) to support her narrative.

Next, on the record before it, Defendant's counter really just sounds like "the CEO is too busy to be deposed," rather than a legitimate proportionality objection under Rule 26(b)(2)(C). Similarly, Defendant has not put any evidence before this Court to support its narrative of burdensomeness or that his deposition would be disproportionate to the needs of the case.

Accordingly, **by no later than thirty days from the date of this order**, Plaintiff shall serve a notice of deposition upon Defendant for Mr. Elghandour, identifying possible dates in **late August-September 2026** for his deposition. Plaintiff should be prepared to provide documentary or other evidence to Defendant to support her claims. If Defendant continues to object, Defendant shall state its objection(s) with particularity in a writing to Plaintiff. Then, the parties are hereby **ORDERED** to meet and confer to discuss the objections. The Court will not entertain any further requests for court intervention from the parties on this subject absent full, documented, and sufficient compliance with Local Rule 104.7 and Loc. Rule App'x A, Guideline 1.

## IV.    PLAINTIFF'S  REQUESTS FOR SANCTIONS

In Plaintiff's Spreadsheet and in several filings, she asks for sanctions against the Defendant for its conduct during discovery. *See, e.g.,* Exhibit G to this Letter Opinion and Order, which contains verbatim recitations of Plaintiff's arguments; *see also* ECF Nos. 60, 64,

80, 85.   Plaintiff asserts that Defendants have violated several of the Federal Rules of Civil Procedure, including Rule 37(b), Rule 37(c), Rule 5.2, Rule 11, Rules 30, 33, and 34, as well as several Local Rules (D. Md. 2025). Plaintiff also maintains that sanctions are warranted for violating these rules, and pursuant to 28 U.S.C. §1927 and the Court's inherent authority.

Plaintiff has described thirteen "procedural events" or acts of "bad faith" committed by Defendant, which she believes occurred. Plaintiff describes them as the following: (1) Asymmetric Discovery: Retaliatory Delay, Document Dumping, Withholding Merit-Based Discovery, and bates number reliance, Violating Discovery Sequencing; (2) Other Discovery Procedural Abuse and Extortion; (3) Deposition/Discovery Obstruction; (4) Repeated ADA Mischaracterization Plaintiff Disability and Retaliatory Conduct; (5) Repeated Refusal to Provide Availability and Repeated Deposition Interference; (6) False Statements and Misrepresentations to the Court; (7) Improper Deposition notice and Harassing Deadlines and Discovery Abuse; (8) Duplicative, Harassing, Discovery abuse; gamesmanship; (9) Unauthorized Practice and Improper Attorney Conduct (Out-of-State Associate Acting Without Pro Hac Vice); (10) Unauthorized Disclosure of Personal Identifying Information (PII) and medical information-Data Breaches; (11) Procedural Violations (Court orders/Post Hearing Directives); (12) Witness Interference/Third-Party Contact with Ongoing Harm; (13) Witness Intimidation/Interference; Improper Third-Party Contact. *See*  Exhibit G.

As held above, the undersigned has reviewed all filings in the docket and all submissions, evaluated the parties' arguments, and analyzed all relevant case law  related to the Local Rules (D. Md. 2025) and the Federal Rules of Civil Procedure that are truly at play here.

### 1.  Legal Standards

The Court first finds that Rule 11does not apply to discovery. *See*  Rule 11(d). Accordingly, Plaintiff's requests for sanctions under this Rule based on allegations of Defendant's discovery-related conduct is **DENIED**. Next, to the extent that Plaintiff suggests that Defendant defied the Court's orders and engaged in "procedural misconduct" before the undersigned, the Court finds that the record does not support this narrative. A request for sanctions on this basis is also **DENIED**.

Next, the Court does not find that Defendant has violated Rule 37(b) or Rule 37(c) at this juncture. *See* Section III. A., B., C.

Regarding Fed. R. Civ. P. 5.2, that rule includes provisions that the parties to follow in redacting certain PII from filings before they are made on the public docket. There is no separate provision in this Rule that addresses sanctions that could apply if a party violates Rule 5.2.  As is relevant to Rule 5.2., the Court retains power to sanction a party who violates a Rule 37(b) discovery order related Rule 5.2.  Also, a court retains the power to sanction a party for violating Rule 5.2 under its inherent authority.

The Supreme Court has held that federal courts have "inherent powers" that emanate from their ability to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)(further citation

omitted). This power, however, "must be exercised with the greatest restraint and caution, and then only to the extent necessary." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). Thus, courts need clear and convincing evidence of "fraud, deceit, misrepresentation, harassment, and unethical conduct." *Dickens v. Conner*, Civ. No. SAG 23-177, 2024 WL 4135388, at *3 (D. Md. Sept. 10, 2024)(further citation omitted); *Johnson v. Baltimore Police Dep't*, Civ. No. ELH 19-0698, 2022 WL 9976525, at *36 (D. Md. Oct. 14, 2022). "Clear and convincing evidence" is defined as "that which supports 'a firm belief or conviction, without hesitancy, as to the truth of the allegation sought to be established." *United States v. Welsh*, 564 Fed. Appx. 727, 728 (4th Cir. 2014)(quoting *United States v. Antone*, 742 F.3d 151, 159 (4th Cir. 2014)).

Moreover, pursuant to 28 U.S.C. § 1927, a court has the power to sanction an attorney "who so multiplies the proceedings. . . unreasonably and vexatiously." Sanctions may be imposed under this statute only under certain circumstances. *Six. v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018). In other words, "merely negligent conduct will not support an imposition of sanctions under 28 U.S.C. § 1927." *In re Gould*, 77 Fed. Appx. 155, 161 (4th Cir. 2003). Instead, "similar to the imposition of sanctions based on inherent authority, Section 1927 'requires [finding that counsel acted in bad faith.'" *Yoder v. Conaway Racing & Trucking, LLC,* Civ. No. LKG-23-1365, 2026 WL 524140, at *6 (D. Md. Feb. 25, 2026)(citing *In re Gould*, 77 Fed. Appx. at 161 (further citation omitted). It is well settled that clear and convincing evidence of bad faith or vexatious behavior is required before a court may impose a Section 1927 sanction. *Johnson*, 2022 WL 9976525, at *36; *Glynn* v. *EDO Corp.*, Civil Action No. JFM-07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010).

### 2. *General Factual Findings*

Having reviewed the entire record before me, the Court first finds that, for some inexplicable reason, the parties have not been consistently civil or professional towards each other. This is despite Judge Chuang ordering them to behave appropriately. (ECF No. 75). The inference that I draw from the record is that Plaintiff is frustrated by the actions of her former counsel and does not trust the Defendant's counsel. Plaintiff has made wild accusations against Defendant's counsel about witness tampering or distributing her PII without authorization-serious allegations that lack credible evidentiary support. Plaintiff also accuses Defendant of failure to respond to discovery, trying to paint a narrative of malfeasance. *See, e.g.,* ECF Nos. 60, 64 and Exhibits D-G, attached thereto. Furthermore, there is evidence that Plaintiff tried to impose short and likely-unrealistic deadlines on Defendant to respond to her communications. *See, e.g.,* ECF Nos. 85-2, p. 10; 85-4, p. 3

The Court does not completely credit either side's narratives because the parties have cherry-picked their so-called facts. For instance, Plaintiff complains about former counsel not participating in discovery for almost two years and then tries to imply that there are no issues with her discovery. Plaintiff completely ignores Defendant's filings about how former counsel "left behind a spate of unresolved discovery issues," and about how she failed to produce documents and otherwise cooperative with discovery. *See, e.g.,* ECF Nos. 37, 49. Plaintiff also blames Defendant's counsel for missing deadlines, suggesting, without credible factual support, that there was a conspiracy of sorts between her former counsel and Defendant's counsel,

leading to her "harassment." The Court declines to entertain her unsupported allegations, especially when faced with, e.g., the joint status reports filed by former counsel and Defendant's counsel about agreements made regarding discovery. *See, e.g.,* ECF Nos. 42, 43, 44.

To be clear, that Court does not find that Defendant has always behaved without reproach  or has consistently acted in a way to move discovery forward.[12] There is evidence that Defendant tried to impose short and likely-unrealistic deadlines for *pro se* Plaintiff to respond to its communications. *See, e.g.,* ECF No. 85-4, pp. 1, 4, 6 . In addition, there are some questions about which email Defendant used to communicate with Plaintiff and about the timing of settlement discussions. ECF No. 64. More important, Defendant has failed to put before the Court helpful evidence related to Plaintiff's allegations that in November 13, 14, and 20 she emailed counsel about her outstanding discovery, and what Defendant's substantive responses were thereto. *See*  Plaintiff's Documents in Support of Spreadsheet ("Plaintiff' Interrogatories RFAs and Notice of Deposition," "Plaintiff Supplement Response to Defendant," and "RE to Deff's Letter Nov. 13-2025docx").  Instead, Defendant opted to focus on Plaintiff's suggestion of "out-of-turn" *Anderson* spreadsheet, and stated that "Plaintiff's approach has not advanced the ball in resolving the outstanding disputes and leave the parties in the same position as before the December 30, 2025 telephonic discovery hearing." (ECF No.109, p.3)  Relatedly, the Court is left with generic responses:  "Defendant believes that Defendant has fully complied with its obligations in the discovery process," and "[Defendant] reserves the right to provide further responses to the allegations made by Plaintiff in this row." *See, e.g.,* Exhibit 6, Topic #1.  The Court made clear during the hearing that the Defendant was to provide fulsome responses to Plaintiff's allegations; Defendant could have provided documentation to support its counternarratives beyond what has been provided.    Next, as set forth later in this Letter Opinion and Order, Defendant has also lobbed inflammatory accusations against Plaintiff and her former counsel and switched positions on the conditions under which Plaintiff would be deposed.  In short, having reviewed the entire record before it, Defendant has also failed to offer complete and credible evidence to establish that it has complied with all discovery obligations.

The record supports my finding that both parties have engaged in gamesmanship  or behavior that is not consistent with Local Rule 104.7 and Loc. R. App'x A, Guideline 1. The Court further finds that the record supports that some delays in litigation are the Defendant's fault, and that some delays are Plaintiff's fault.  Regarding prejudice, I do not find credible either side's claims on this point. No one's hands are clean.

Having reviewed the entire record before me, the Court does not find clear and convincing evidence of a Rule 5.2 violation or of a Rule 37(b) violation.  Next, the Court does not have a "Firm belief or conviction, without hesitancy," that Plaintiff's allegations are true. *United States v. Welsh*, 564 Fed. Appx. at 728.  Put another way, the Court does not find clear and convincing evidence exists that Defendant engaged in, e.g.,  harassment or unethical conduct. *Dickens*, 2024 WL 4135388, at *3.  Thus, the Court exercises restraint and does not find sanctions under its inherent authority are necessary. *Shaffer Equip. Co.*, 11 F.3d at 461. Similarly, the Court does not find clear and convincing evidence of bad faith or vexatious

---

[12] *See* n. 2, *supra*.

behavior by Defendant's counsel; therefore, the Court declines to impose a Section 1927 sanction. *Johnson*, 2022 WL 9976525, at *36.

Additional findings and analysis are below. Ultimately, then, I decline to find, **at this juncture**, that  clear and convincing evidence exists to merit the imposition of sanctions against Defendant by the undersigned.  Defendant is hereby forewarned that should Defendant's failure to abide by the Court's discovery orders, including this Rule 37(b) Letter Opinion and Order, could lead to the imposition of  sanctions against it. Such sanctions could include precluding Defendant from using whatever it has not disclosed to Plaintiff during discovery in the future (for example, in connection with a summary judgment motion, at a hearing, or at trial). *See, e.g.,* Rule 37(b)(2)(A), Rule 37(c)(1), Rule 37(d).

### 3.  Topic 1

This topic relates to so-called bad faith litigation topics of Defendant. Plaintiff advances several allegations against Defendant, many of which are difficult to follow.  *See*  Exhibit G, Topic #1.

Exercising its discretion in resolving discovery disputes before it, the Court will address the issues. First, Plaintiff alleges that Defendant has engaged in a "document dumping" with respect to documents that carry Bates Nos. Arcellx_0001-Arcellx_1658. *See*  Exhibit G, Topic #1.  As held above, Defendant has been ordered to provide a Rule 26(g) certification. Defendant must comply with the Court's orders regarding the detail required in that certification. Defendant is warned that its failure to establish that it did not "dump" non-responsive documents on Plaintiff could lead to the imposition of sanctions.  Second, Plaintiff alleges that Defendant has produced "significant duplications fragmented email out of their normal threading (sic)." *See* Exhibit G, Topic #1.  As held above, Defendant has been ordered to provide a Rule 26(g) certification. Defendant must comply with the Court's orders regarding the detail required in that certification. Defendant is warned that clear and convincing evidence that it failed to produce complete documents and/or that it produced "fragmented email" will lead to sanctions.

### 4.  Topic 2

Plaintiff advances several allegations against Defendant, many of which are difficult to follow.  This category contains allegations of "extortion," "ADA non-compliance and conditioning demand and threats designed to delay discovery," "improper disclosure of PII," "obstruct Plaintiff's access to testimony." *See*  Exhibit G, Topic #2.  Plaintiff makes bald accusations about "forced medical over disclosure," and about how Defendant's actions are "to stall the process and exploit Plaintiff's disability-related limitations." *See*  Exhibit G, Topic #2. Plaintiff also asserts "exacerbation of medical symptoms due to coercive discovery practices, invasion of privacy, chilling effect on ADA rights, increased litigation burden and motion practices on disabled pro se litigant." *See*  Exhibit G, Topic #2.  In the absence of clear and convincing evidence, the Court declines to sanction Defendant based on Plaintiff's suspicions.

### 5. Topics 6, 9, 11

Plaintiff's arguments related to these topics are more appropriately addressed by the district court, as some of them appear to relate to filings previously considered by the district court. *See* ECF Nos. 60, 75, 77 Accordingly, the undersigned declines to address them. To the extent that Topic 11 accuses Defendant of filing an unauthorized motion to compel, the record belies this accusation.

### 6. Topics 10, 12, 13

Plaintiff theorizes that Defendant's counsel disclosed her PII to someone or some entity that she fails to identify. Plaintiff complains about "stalking and disorderly behavioral and actions changes by neighbors (sic)." Plaintiff accuses Defendant's counsel of contacting Adam Lynch. *See* Exhibit G, Topics # 10, 12, 13. In the absence of clear and convincing evidence, the Court declines to sanction Defendant based on Plaintiff's suspicions.

### 7. Topic 8

The Court does not find that the record establishes clear and convincing evidence of "coercive" behavior.

### 8. Topics 3, 4, 7

The Court finds that these topics ultimately are about the same issue: the conditions under which Plaintiff's deposition will occur and whether or not Defendant acted improperly related to the same.

As an initial matter, before the Court is a lot of acrimonious back and forth on when and under what circumstances Plaintiff will be deposed. There are a lot of accusations of malfeasance or allegations of gamesmanship or of bad faith about whether there was an agreement to depose Plaintiff in person or an agreement to allow her to appear remotely for a deposition. There is a suggestion that Plaintiff provided no information to support her request to conduct a remote deposition, and there is a suggestion that there is something suspicious about Plaintiff's notes from a medical professional that were offered to support her request. There are repeated requests for documentation to support the request. There are arguments about lack of reciprocity related to when Plaintiff's deposition and others' depositions should be scheduled, and there are related accusations about multiple last-minute cancellations of depositions. There are statements about how Defendant pivoted on its justification for "demanding" that Plaintiff be deposed in person, including that there was a demand that Plaintiff cover Defendant's counsel's costs associated with cancelling her deposition at the last minute. *See, e.g.*, ECF Nos. **49**, ¶21; **58-1**, pp. 1-6; **58-2**, p. 2; **62**, pp.3-4; **62-1**, pp. 2-4; **64-2**, pp. 4, 6, 7; **64-4**; **64-5**, pp. 1-14; **64-6**, pp. 5, 39-43 45-59, 64-72, 80-83, 88, 128; **83**, p. 3; **85-3**, p.3; **85-4**, p. 8; and **91-1**, pp. 7-22.

I find that both sides have taken unreasonable positions on this issue, have spilled a lot of ink just for the opportunity to point fingers at each other, and cherry-picked the facts to suit

their respective narratives. For instance, Plaintiff's second attorney did agree to an in-person deposition at one point in time, and the record shows that Plaintiff did provide notes from a medical professional.  In addition, there is a suggestion that Defendant requested a virtual deposition.  Thus, the Court further finds that the parties have needlessly wasted scarce judicial resources with their lengthy and repetitive filings, simply because they failed to be reasonable.[13]

In sum,  there is not clear and convincing evidence before this Court to support the imposition of sanctions.

*9.  Topic  5*

*See* Section III.D.3. above. Any request for sanctions is DENIED as premature.


**V.     CONCLUSION**

Although informal, this is a Letter Opinion and Order of the Court and shall be docketed as such.


/s/

_____
The Honorable Gina L. Simms
United States Magistrate Judge

---

[13] The parties are again reminded that they must be civil towards each other, work together, abide by  Judge Chuang's prior order (ECF No. 75), and abide by Local Rules, Appendix A, Discovery Guidelines of the United States District Court for the District of Maryland, including 1a., 1c., 1d., 1f., 4a., 4b., 4c., 4d., 4e.  The parties' failure to heed this final warning will give the Court plenty of cause to impose sanctions in the future.